JOHN CHARLTON et al., Respondents, *v.* CORA I. SCOVILLE et al., Appellants.*

Where, in an action on contract, a counterclaim is set up in the answer, and plaintiff recovers judgment, the real amount in controversy between the parties is not simply the sum named in the judgment, but also the amount of the counterclaim extinguished thereby; and so, in determining as to whether the judgment is appealable to this court, the amount of the counterclaim is to be added to the judgment.

(Argued December 20, 1894; decided January 15, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 28, 1893, which modified, and affirmed as modified, a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

This is an action brought to foreclose a mechanic's lien filed by the plaintiffs against the premises owned by the defendant Cora I. Scoville, in the village of Tonawanda, in the county of Erie, in this state. The defendant Charles H. Scoville is the husband and agent of the other defendant, and acted as her agent in the matters hereinafter spoken of. The answer of the defendants denied many of the allegations contained in the complaint and set up a counterclaim amounting to between six and seven hundred dollars. The action was tried at the Erie Special Term in equity, held at Buffalo, and the following are some of the facts found by the court upon such trial: On the 26th of August, 1890, the plaintiffs entered into a contract with the defendant Charles H. Scoville to do certain work towards the building of a house upon a lot owned

---

\* Reported below, 68 Hun, 348.

by the defendant Cora I. Scoville, in the village of Tona-
wanda, in this state, for the sum of $3,980, upon the terms
stated in the contract.   In the contract executed by the par-
ties were subdivisions 4 and 12, which read as follows:

"4th.  The contractors shall, within twenty-four hours after
receiving written notice from the architect to that effect, pro-
ceed to remove from the grounds or building all materials
condemned by him, whether worked or unworked, or take
down all portions of the work which the architect shall con-
demn as unsound or improper, or as in any way failing to
conform to the drawing and specifications, and to the con-
ditions of this contract.   The contractors shall cover, protect
and exercise due diligence to secure the work from injury,
and all damage happening to the same by their neglect shall
be made good by them.

"12th.  Should the contractors at any time refuse or neglect
to supply a sufficiency of properly skilled workmen, or of
materials of the proper quality, or fail in any respect to prose-
cute the work with promptness and diligence, or fail in the
performance of any of the agreements on their part herein
contained, such refusal, neglect or failure being certified by
the architect, the owner shall be at liberty, after three days
written notice to the contractors, to provide any such labor or
materials, and to deduct the cost thereof from any money
then due or thereafter to become due to the contractors under
this contract; and if the architect shall certify that such refu-
sal, neglect or failure is sufficient ground for such action, the
owner shall also be at liberty to terminate the employment of
the contractors for the said work and to enter upon the prem-
ises and take possession of all materials thereon, and to employ
any other person or persons to finish the work, and to provide
the materials therefor; and in case of such discontinuance of
the employment of the contractors they shall not be entitled
to receive any further payment under this contract until the
said work shall be wholly finished, at which time, if the
unpaid balance of the amount to be paid under this contract
shall exceed the expense incurred by the owner in finishing
the work, such excess shall be paid by the owner to the con-
tractors, but if such expense shall exceed such unpaid balance,

the contractors shall pay the difference to the owner.    The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties."

The plaintiffs sublet the carpenter work to one William Stokes who again sublet the same to his brother Michael, who with several carpenters commenced work on the premises on the 22nd day of September, 1890, and continued to work thereon until September 30, 1890, and during that time neither of the plaintiffs gave any personal attention to the work and William Stokes but slight attention.    On September 30th the frame of the building up to the top of the second story had been erected and certain materials used in erecting the structure had been delivered upon the premises by the employees of the plaintiffs.    A large part of the work done on the building up to this time was not in accordance with the plans or specifications, and the materials used were improper and not in accordance with the same, and in order to remedy these defects it would be necessary to take the building down.    On the 30th of September the architect, assuming to act under the provisions of the contract, gave to the defendant Charles H. Scoville a certificate in writing that the carpenter work was not being done in accordance with the plans and specifications, and that the plaintiffs had employed incompetent and unskillful workmen to do the work, and had used unseasoned hemlock for joists and sheathing, and upon the above-mentioned grounds he advised the defendant to protect his interests as provided for in part 12 of the contract.    Upon receipt of this paper the defendant Charles H. Scoville prepared and signed a notice in writing directed to the plaintiffs and dated September 30, 1890, which notice reads as follows :

" *Messrs. J. & T. Charlton :*

" I herewith give you three days' written notice, to expire October 4th, at 9 A. M., to remove all labor and materials condemned by the architect, Mr. F. William Fisher, and provide such materials as called for in the specifications.    And I also

notify you that I shall make use of the power given me under part 12 in contract, to terminate the employment of the contractor who shall do said carpenter work.

"Enclosed find the certificate of the architect, Mr. F. William Fisher.

"CHARLES H. SCOVILLE,
"Tonawanda, N. Y."

This notice inclosed the certificate of the architect above spoken of, and was served personally on one of the plaintiffs on September 30th. After some conversation between one of the plaintiffs and the defendant Charles H. Scoville, and also between that plaintiff and Michael Stokes and the architect, at Buffalo, the plaintiffs expressed a willingness at that time to remedy the defects, but on the 3d of October the court finds that the work was abandoned by the plaintiffs, and without remedying any of the defects, except in one or two respects, and the work done up to that time was not to the satisfaction or approval of the architect, nor, although plaintiffs had ample opportunity for that purpose, did the work comply with the notice from Charles H. Scoville. After the 3d of October the court also finds the contract was terminated and annulled by reason of the failure and refusal of plaintiffs to perform the same. The defects in the building were important and substantial. After abandoning the contract the plaintiffs did nothing further in regard to the building or the materials on the premises, and after letting the building remain in that condition for two weeks the defendants took it down, because it was necessary to do so in order to have the house constructed according to the contract. The defendants then proceeded through other contractors to re-construct the building in accordance, as they insist, with the plans and specifications of the old contract, but at a necessary cost of between $600 and $700 in excess of the price named in that contract. The court, however, refused to find that the building was completed according to the original contract, or that the necessary cost of so building it was more than the original contract price. In the course of performing the work and procuring the materials therefor the defendants used a certain amount of the materials which had belonged to the plaintiffs, and which they

had put into the building up to the time when they abandoned the contract. Those materials amounted in value to $318. The expense of taking down the structure erected by the plaintiffs and erecting another upon the same foundation, up to the point where the original structure was abandoned, was $123.50, which the court found was the damage sustained by the defendants by reason of the plaintiffs' breach of their contract, such sum being made up of the expense of taking down the old structure and the labor of carrying the new one to the point where the plaintiffs had left the old one. The plaintiffs filed a lien against the house for the purpose of securing their claim for the amount of the materials belonging to them which were used by the defendants in the erection of the house subsequent to the abandonment of the contract by the plaintiffs.

The plaintiffs had never been paid anything under their contract at the time they abandoned it, and the contract provided for a certificate from the architect before any payment should be due under it. The court gave judgment to the plaintiffs for the value of their materials used by defendants, which it found to be $318, deducting therefrom $123.50, the amount which it cost the defendants to tear down and erect the building in accordance with the contract up to the point it had reached when the plaintiffs left work, and for the balance, $194.50, judgment was directed for the plaintiffs. The court refused to find the facts upon which to base defendants' claim to recover damages for the increased cost and expense they had been put to in erecting the building according to the original contract.

Both parties appealed to the General Term from the judgment entered upon the decision of the Special Term, and upon the hearing of the appeals that court increased the judgment in favor of the plaintiffs by striking out that part of the allowance to defendants of $123.50, which consisted of the cost and expense of re-erecting the building to the point at which it was when it was pulled down upon the abandonment of the contract by the plaintiffs, and which was $83. The General Term allowed to the defendants the cost and expense of tearing down the building, which was $40.50 out of the

$123.50, and disallowed the balance ($83), thereby increasing the judgment in favor of plaintiffs by that sum, or to a total of $277.50, and, as thus modified, the judgment was affirmed. The following is the opinion in full:

"The plaintiffs take the point that the appeal to this court is unwarranted by the Code, inasmuch as the judgment appealed from is for a less sum than $500, exclusive of costs, and they cite several cases as authority for their position. None of them, however, is applicable to this case. The judgment in favor of the plaintiffs here not only gives them the sum named therein of $277.50, but it extinguishes the counterclaim made by the defendants to the amount of some $650, and the real amount in controversy between these parties is not only the sum named in the judgment for the plaintiffs, but is also the amount of the counterclaim contended for by the defendants, which is extinguished by this judgment. (*Reed* v. *Trowbridge*, 106 N. Y. 657.) We have never held that where a counterclaim is extinguished by the judgment for plaintiff the amount of the counterclaim could not be added to plaintiff's judgment for the purpose of discovering the real amount in controversy between the parties. The amount in controversy here is clearly more than $500.

"Upon an examination of the case we think that no error has been committed entitling defendants to a new trial.

"It is plain, and the court have so found, that the plaintiffs, prior to the service upon them of the notice signed by defendant Charles H. Scoville, had violated their contract in regard to the materials to be placed in the building, and also in regard to the manner of its construction, and that such violations were important and substantial.

"They abandoned the work entirely and terminated the contract, at least so far as their own action could do so before the fourth of October, 1890. From that time on the defendants had full control, and they proceeded to tear down the portion already erected and to put up a building in accordance with the plans of the old contract, but at an increased cost, as they alleged, of some $650. In the course of the work the defendants used some of the materials belonging to the plaintiffs,

and, after deducting their value, the defendants claim a judgment for the balance they were compelled to pay for the completion of their building over and above the price mentioned in the old contract.

" The defendants claim, and we may admit, that the contract was not terminated by the wrongful abandonment of work by plaintiffs, and that defendants were entitled to hold the plaintiffs liable thereafter in the manner provided for by the terms of such contract for all damages they might sustain by reason of the plaintiffs' violations of their obligations as therein set forth.

" The defendants claim to have proved the fact and extent of their damage by the certificate of the architect given, as they assert, by virtue of the last part of the 12th subdivision of the contract. If that certificate had been given after full compliance with the previous provisions of that subdivision it would have been, under the terms of the contract, conclusive upon both parties. It was not so given. There is no evidence or pretense that the architect had ever given the prior certificate as to the character of the refusal or neglect of the plaintiffs which was necessary in order to permit the defendants to proceed thereafter in accordance with the terms of the contract and terminate the plaintiffs' employment and themselves go on with and fulfill the provisions of such contract. Consequently they could not avail themselves of the certificate of the architect as proof of the amount of their damage. They had themselves failed to comply with the terms upon which they had the right, under the contract, to claim that the certificate was admissible to prove and conclusive as to the amount of their damage.

" Other and common-law evidence of damage was necessary, and it should have been uncontroverted in order that an exception to a refusal to find the fact might be available here.

" The trial judge refused to find upon this subject of increased cost and damage, as requested by the defendants, and his opinion shows that his refusal was based not alone because in his judgment the alleged fact was immaterial but because it was untrue. The judge said that such a building could, upon the

evidence in the case, have been constructed within the contract price, which was amply sufficient for that purpose. The twelfth subdivision of the contract did not permit the defendants to pay any price they might choose for the further prosecution of the work and charge it to the plaintiffs. By its fair meaning they were restricted to such cost or price as might reasonably be necessary in order to complete the work according to the contract, and if it exceeded the contract price the plaintiffs would be responsible. For the reasons above stated the certificate of the architect was no evidence of the cost or damage. The defendants have no finding that they had in fact sustained damage from the extra cost of the building, and the alleged fact is not established by uncontradicted evidence. That they paid $650 more than was provided for in the old contract may be true, but that it was reasonably necessary so to do in order to complete the building according to the original contract, does not appear and would seem not to have been the fact. All other damage they have been allowed for.

"We think the judgment should, therefore, be affirmed, with costs."

*LeRoy Parker* for appellants.

*George Wing* for respondents.

PECKHAM, J., reads for affirmance.
All concur, except HAIGHT, J., not sitting.
Judgment affirmed.