[S. F. No. 5888. In Bank.—May 28, 1913.]

## AMERICAN-HAWAIIAN ENGINEERING AND CONSTRUCTION COMPANY (a Corporation), Respondent, v. EMMA G. BUTLER, Defendant and Appellant; WESTERN EXPANDED METAL AND FIREPROOFING COMPANY (a Corporation), Defendant and Respondent.

BUILDING CONTRACT—ARCHITECTS' CERTIFICATES—FAILURE OF CONTRACTOR TO PROSECUTE WORK WITH PROMPTNESS—RIGHT OF OWNER TO SUPPLY WORKMEN AND MATERIALS—TERMINATION OF CONTRACT BY OWNER—RESCISSION.—A provision in a building contract read as follows: "Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on his part herein contained, such refusal, neglect, or failure being certified by the architects, the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor and materials, and to deduct the costs thereof from any money then due, or thereafter to become due, to the contractor under this contract; and if the architects shall certify that such refusal, neglect or failure, is sufficient grounds for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work, and enter upon the premises, and take possession of all materials thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract, until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed the unpaid balance, the contractor shall pay the difference to the owner." *Held*, that the provision authorizing the owner to provide the necessary labor and material when the contractor fails so to do does not contemplate a termination of the whole contract, and only contemplates the supplying of a sufficient number of properly skilled workmen, or the supplying of a sufficiency of proper material, each to be used by the contractor under his contract, in the event that he himself shall have refused or neglected to supply them; and that the further provision, authorizing the owner to terminate the whole contract, upon receiving a

CLXV Cal.—32

certificate of the architect as to the sufficiency of the ground therefor, was one for the rescission of the contract at the instance of the owner for the default of the contractor.

Id.—Construction of Architects' Certificates—Notice of Termination by Owner.—In order to render operative certificates of the architect issued in pursuance of such provisions of the contract, there must be a substantial compliance by him with the terms of the contract touching their issuance. As such certificates contemplate forfeiture and the right of rescission, their terms are to be strictly construed. The same rule of strict construction is applicable to the notice following the architects' certificates, which the contract requires shall be given by the owner to the contractor. While no precise form of words is required in the notice, it must be such as fairly and fully to advise the contractor of what the owner demands, and what he will do in the event of a noncompliance with the demand.

Id.—Construction of Contract—Partial Termination of Work not Contemplated.—Such provisions of the contract, while in proper instances they authorize the termination of the employment of the contractor *in toto*, do not contemplate a termination of his employment for only a part of the work. As to any part of the work touching which, according to the architect's certificate, the contractor is delinquent, the owner may furnish the requisite labor and materials, which shall be used by, and charged to, the contractor, but he may not oust the contractor from that part of the contract and undertake to perform it himself, independent of the contractor.

Id.—Failure of Owner to Terminate Contract in Toto—Owner not Authorized to Take Charge of Work—Contractor Justified in Resisting Attempt.—Where the architects' certificate was sufficient to have justified the owner to follow it up with a lawful notice to the contractor terminating his employment, but the owner failed to do so, it resulted from such failure that the owner was not authorized to take charge of the work or premises, or any part thereof, and that the contractor was justified in resisting the owner's attempt to do so even if such attempt extended to the whole work instead of only parts thereof.

Id.—Conclusiveness of Architect's Certificates to Facts Stated Therein.—Where the parties to a building contract thereby authorize the architect, as arbiter, to determine and certify the existence of a fact when such fact becomes material to a proceeding under the contract, his certificate, duly made, that the fact exists, is conclusive upon the parties with respect to the thing to be done, to which such fact relates, or as to which, under the proceeding, it is to affect the rights of the parties, and such certificate can be impeached as to such facts only for fraud, or for gross mistake amounting to fraud.

ID.—NOTICE OF TERMINATION FOLLOWING ARCHITECT'S CERTIFICATE.—
If, in pursuance of such certificate of the architect, the owner had
given a proper notice terminating the employment, the certificate,
if not so impeached, would be conclusive evidence of the delinquency
of the contractor in the particulars therein stated, in any controversy
growing out of such termination. It is not, however, strictly speak-
ing, a common-law award.

ID.—RIGHT OF CONTRACTOR TO PROGRESS PAYMENTS—EFFECT OF FAILURE
TO PROSECUTE WORK WITH DILIGENCE.—Under such provisions of
the contract, the rights of the contractor to receive progress pay-
ments due him for work already done, as called for by a further
stipulation of the contract entitling him to monthly payments for
such work, did not cease at the time of his failure to furnish the
necessary workmen and materials to prosecute the work with dil-
igence. Such right did not cease until, nor unless, there has been a
valid termination of his employment in the manner provided.

ID.—UNJUSTIFIABLE TERMINATION BY OWNER—QUANTUM MERUIT BY
CONTRACTOR—EVIDENCE OF FREEDOM OF BUILDING FROM LIENS OR
CLAIMS.—The clause in the contract requiring monthly progress
payments to the contractor provided "that before each payment, if
required, the contractor shall give the architects good and sufficient
evidence that the premises are free from all liens and claims charge-
able to the said contractor; and further, that if at any time there
shall be any lien or claim for which, if established, the owner of the
premises might be made liable, and which would be chargeable to
the said contractor, the owner shall have the right to retain out of
any payment then due or thereafter to become due, an amount suffi-
cient to completely indemnify himself against such lien or claim."
At the time of the demand for payment of the last month's work, no
requirement or demand for evidence of freedom from liens or claims
against the contractor was made. There was then a claim existing
against the contractor in favor of a subcontractor, but the owner's
refusal to pay was not based upon that fact, but on the fact that
she then believed that she had lawfully terminated the plaintiff's
employment. Neither the lack of evidence of freedom from liens,
nor the existence of the said claim, was pleaded in the answer as an
excuse for the refusal to pay, in this action by the contractor to
recover on the *quantum meruit* the value of the labor and materials
furnished under the contract. *Held*, that under such circumstances,
the absence of a finding on the subject was immaterial.

ID.—WAIVER OF CERTIFICATE THAT PROGRESS PAYMENT WAS DUE—
PROPER PERFORMANCE OF WORK ENTITLING CONTRACTOR TO PROGRESS
PAYMENT.—A provision of the contract required that no progress
payments were to be made until the architects certified in writing
that all work upon the performance of which the payment was to
become due had been done to their satisfaction. For many months

it had been the custom of the contractor, at the beginning of each month, to present to the architects an estimate of the work done and material placed during the preceding month, and this was understood to constitute a request to them to examine the work and certify that it was done to their satisfaction. Until the time of the presentation of the estimate of the last month's work, this had always been done. When this last estimate was presented, the architects notified the contractor that they were instructed by the owner not to give the certificate, and the owner also declared that she would make no more payments. As a matter of fact, the last month's work was well done, and no claim was ever made that it had not been properly done, nor any suggestion that the architects' certificate was desired, the owner's refusal to pay being based upon reasons having no relation to the character of the work. *Held,* that the architects should have given their certificate approving the work, and that, under the circumstances, the payment for the last month's work became due, notwithstanding the absence of such certificate, which must be considered as having been waived, and that demand for payment must be deemed to have been duly made.

ID.—RESCISSION BY CONTRACTOR—UNJUSTIFIABLE REFUSAL OF PROGRESS PAYMENT.—The unjustifiable refusal of the owner to make a progress payment, called for by the building contract, constituted a breach of the contract, and is a sufficient cause for a rescission of the contract by the contractor, and authorized him to maintain a suit upon the *quantum meruit* for the reasonable value of the work and materials incorporated into the building.

ID.—RESCISSION WHEN AUTHORIZED—PARTY RESCINDING IN DEFAULT IN UNRELATED MATTER.—The general rule that a rescission of a contract without the consent of the other party cannot be made except by one who is not himself in default, does not apply to a delinquency of the rescinding party, which has no relation to the obligation of the other party, in respect of which the right of rescission is claimed, and which does not excuse, prevent, or interfere with his performance of that obligation, or affect or impair his duty to perform it. Such general rule only applies to a delinquency of the complaining party connected with the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction.

ID.—DEFAULT OF CONTRACTOR IN DILIGENCE—LIABILITY OF OWNER TO MAKE PROGRESS PAYMENT—CONTRACTOR AUTHORIZED TO RESCIND.—The mere negative default of the contractor in failing to prosecute the work of building with diligence, for which neglect the contract afforded the owner a specific remedy which she omitted to pursue, did not affect the liability of the owner to pay for the work already done, and her unjustifiable refusal to make such payment authorized the contractor to rescind the contract.

ID.—ARCHITECTS' CERTIFICATE NOT CONCLUSIVE IN COLLATERAL MATTERS.—A certificate· of the architects, finding the failure of the contractor to prosecute the work of building with diligence, which was issued by them to initiate a proceeding to terminate the contract, and for the sole purpose of serving as a basis for a notice of its termination by the owner, but which became abortive because no such notice was given, is not conclusive of the fact of the failure of the contractor in any matter not dependent on or arising out of the proceeding to terminate the contract. In any other collateral matter, the certificate, at most, could be no more than *prima facie* evidence of the failure of the contractor.

ID.—FINDING—FAILURE TO SUPPLY SUFFICIENT WORKMEN OR MATERIALS—DILIGENCE IN PROSECUTION OF WORK.—The finding of the court that the contractor had not failed or neglected to supply sufficient workmen and materials, or to prosecute the work with diligence, is held to be supported by the evidence.

ID.—ORAL CONTRACT EXTENDING TIME FOR COMPLETION OF BUILDING—DESTRUCTION OF BUILDING BY FIRE—WAIVER OF PROVISION FOR DAMAGES FOR DELAY—ESTOPPEL OF OWNER.—The original written contract for the erection of the building in question required its completion on or before September 1, 1906, and provided for the payment to the owner of liquidated damages for each day's delay. While the building was in course of construction, the· great fire in San Francisco, of April, 1906, destroyed everything in it that was combustible, and for several months prevented the resumption of ordinary business in that city. Under the contract, the owner was bound to restore the destroyed parts of the building, and put it in such condition that the remainder of the work could be done. She elected to do so, and employed the original contractor for that purpose. She knew that the work of restoration could not be done until after the time fixed in the original contract for the completion of the entire building, but did not specify any time within which the work of restoration should be completed, and, in fact, that work was not completed until more than two months after September 1, 1906. She made no complaint of this delay, but directed the contractor to proceed with the work, and complete the building in accordance with the original plans, and thereafter, as the work progressed, according to her directions, regularly made the monthly progress payments as they became due, and allowed the contractor to go on expending large sums of money in the building, without mentioning the fact that liquidated damages, or damages for loss of rents, had been or were accruing, or claiming the right to deduct the same from the monthly payments. *Held*, the owner was estopped from denying either the making of an oral agreement for an indefinite extension of the time for the completion of the building, the substantial performance of which would make it lawful as an oral alteration of the original written contract, or the waiver of the

covenants for the completion of the building within the time designated, and was not entitled to recover the liquidated damages for the delay, or damages for loss of rents during the delay.

ID.—EFFECT OF WAIVER OF TIME OF PERFORMANCE.—If the time of performance of a building contract is once waived, even when it is made of the essence, the matter is set at large, and another date of performance can only be fixed by a definite notice, or by conduct equivalent thereto.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, for Appellant.

Edgar C. Chapman, for Plaintiff and Respondent.

Robert H. Countryman, for Defendant and Respondent.

SHAW, J.—The defendant Butler, appeals from the judgment and from an order denying her motion for a new trial. The following statement of the case and discussion of the first question presented are taken from the opinion prepared by Mr. Justice Henshaw, upon which the case was decided in department:

"Plaintiff's complaint is in the form of a common count for the value of labor and material furnished defendant. Defendant's answer is by denial, by certain affirmative defenses and by counterclaim. To the end that complete equity might be done, the court ordered the respondent, the Western Expanded Metal and Fireprofing Company, a corporation, and a subcontractor of plaintiff, to be brought in. This was done under a cross-complaint filed by defendant. The purpose of so bringing in the Metal and Fireproofing Company was that there might be made by the court an apportionment to it of such share of the judgment awarded to the plaintiff as might be just, so that the defendant might not be subjected to further litigation and perhaps compelled to pay a double judgment. The judgment was in favor of plaintiff in the sum

of $67,326.43, of which the Metal and Fireproofing Company, as a subcontractor, was awarded $21,373.68.

"The plaintiff had been engaged in the construction of a building for defendant under a written contract. Defendant, contending that plaintiff had violated the terms of the contract, completed the building at her own expense, and her counterclaim is composed of the items of liquidated damages, of the excess which she was obliged to pay for the completion of plaintiff's contract over and above the contract price and of lost rents. The contractor, upon the other hand, insists that defendant first breached the contract, and that by reason of this breach he was justified in rescinding, as in fact he did rescind, and therefore is entitled to recover in his action of *quantum meruit* and *valebat* the value of the labor and material which he had bestowed upon and placed in defendant's building. This, in skeleton form, presents the general controversy between the parties. As one of the specific defenses, defendant set up the contract, pleaded the failure and neglect of plaintiff for more than the period of two years to supply the sufficiency of workmen and material and a failure to prosecute the work with promptness and diligence, pleaded the certificate of the architect authorizing the defendant to terminate the employment of plaintiff, and that accordingly 'on or about the 12th of September, 1907, the defendant terminated the employment of the plaintiff as mentioned in said notice, and attempted by her agents and servants to enter upon the premises'; that the entry of her agents and servants was resisted and 'thereafter, on or about the fourteenth day of September, A. D. 1907, the defendant, because of such resistance and because of the continued failure and neglect of the plaintiff to supply a sufficient number of workmen and of materials, and the continued failure of the plaintiff to prosecute the work, wholly terminated the employment of the plaintiff for the said work provided in the said contract, and thereafter, on or about the seventeenth day of September, A. D. 1907, the plaintiff quit work on the said building and left the said building in an unfinished condition,'

"The contract between these parties is in the form approved by the Architects' Association and is in general use throughout the United States and Canada. The terms of this contract

pertinent to the questions under consideration are the following:

"By paragraph one the contractor agreed that it would 'well and sufficiently perform and finish, under the direction and to the satisfaction' of the architects all work agreed by the contractor to be performed by it.

"By paragraph seven time is declared to be of the essence of the contract.

"By paragraph eight the contractor agreed to prosecute the work with diligence and to complete it according to the plans on or before September 1, 1906. The contractor agreed to pay $200 a day as liquidated damages for every day after the date fixed for completion on which the contract stood uncompleted.

"By paragraph ten provision is made for extending the time for the completion of the contract when delay was caused by the owner or by the act of God but extensions were not to be recognized unless a claim were presented in writing by the contractor at the time of the delay whereupon the architects were to ascertain and certify the amount of additional time to be allowed.

"Paragraph sixteen is as follows: 'Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on his part herein contained, such refusal, neglect or failure being certified by the architects, the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor and materials, and to deduct the costs thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient grounds for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and enter upon the premises and take possession of all materials thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly

finished at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense shall exceed the unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner, as herein provided, either for furnishing materials or for finishing the work and any damage incurred through such default shall be audited and certified by the architects.'

"By paragraph seventeen payments of monthly installments were to be made to the contractor. These payments were to be seventy-five per cent of the value of the workmanship and materials incorporated by the contractor in the building during the previous month. No progress payments were to be made until the architects certified in writing that all the work upon the performance of which the payment is to become due had been done to their satisfaction, and until satisfactory evidence was produced that the premises were free from liens and claims chargeable to defendant.

"Paragraph eighteen is as follows: 'It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part against any claim of the owner, and no payment made (even the final payment) or the partial or complete release of any sureties given in connection with this contract shall be construed as an acceptance of defective work, or as a release of the contractor from the obligation to promptly repair and make good such defective work, as soon as discovered, and to reimburse the owner for any loss or damage resulting from such defective work.'

"The certificate given by the architects to the owner is as follows:

"August 26, 1907.

"'To MRS. EMMA G. BUTLER, 2005 Sutter Street,

"'San Francisco, California.

"'We hereby certify that the American-Hawaiian Engineering and Construction Company, Ltd., the contractor for certain work on your building in course of construction on the southwest corner of Geary and Stockton Streets in the City

and County of San Francisco, State of California, has failed and neglected to supply a sufficient number of workmen and has failed and neglected to supply sufficient materials to perform the following of the said work according to the terms of its contract,—namely: The plumbing work, the ornamental iron work, the work on the sidewalk arches, the sidewalk work generally, the work on the elevator tops and the work connected with the main roof of the said building.

" 'And we hereby further certify that the said contractor has failed and neglected to prosecute the above mentioned work, and the work generally to be performed by it under its said contract with promptness and diligence.

" 'And we hereby further certify that the said failure and neglect of the said contractor is seriously delaying, interrupting and preventing the proper prosecution of the work on other branches of the said building not included in the said contract.

" 'And we hereby further certify that the said failure and neglect of the said contractor are sufficient grounds to warrant you in terminating the employment of the said contractor for the said work, and to warrant you in entering upon the said premises and taking possession of all materials thereon, and in employing any other person or persons to finish the said work and to provide the materials therefor.

" 'REID BROS.

" 'By Jas. W. Reid,

" 'Architects of the said Building.'

"The notification given by the owner to the contractor is as follows:

" 'San Francisco, Cal., September 3, 1907.

" 'To the American-Hawaiian Engineering and Construction Company, Ltd., 332 Turk St., San Francisco, Cal.

" 'You are hereby notified that Reid Brothers, architects of the building in course of construction for the undersigned on the southwest corner of Geary and Stockton streets, in the city and county of San Francisco, state of California, have issued a certificate, of which the inclosed is a copy.

" 'And you are hereby further notified to supply a sufficient number of workmen and sufficient materials to perform the following work on said building which you are required to perform under your contract with the undersigned, and

to prosecute the said work with promptness and diligence: The plumbing work, the ornamental iron work, the work on the sidewalk arches, the sidewalk work generally, the work on the elevator tops, and the work connected with the main roof generally.

" 'And you are hereby further notified that if you fail or neglect, for the period of three (3) days after this notice shall have been served·upon you, to supply a sufficient number of workmen and sufficient materials to perform the said work and to prosecute the said work with promptness and diligence, the undersigned will terminate your employment for the said work, and will enter upon the said premises and take possession of all materials thereon, and will employ others to finish the said work and will provide the materials therefor, and will otherwise proceed as in the said contract provided.

"Yours, etc.,

" 'EMMA G. BUTLER,
" 'By H. C. Breeden,
" 'Her attorney in fact.'

"Certain of the court's findings are as follows:

" '8. That on the 4th day of September, 1907, plaintiff made and presented to defendant its estimate of all of the materials and labor incorporated in said building by plaintiff during the month of August, 1907, amounting to the sum of $16,311.58, accompanied with a demand that seventy-five per cent of the amount thereof, to wit, $12,233.64, be paid to plaintiff; but said seventy-five per cent of said last mentioned estimate was not then or ever paid by defendant, nor did defendant ever pay or offer to pay plaintiff any portion of the same, nor has defendant ever paid or offered to pay plaintiff for any materials and labor incorporated in said building subsequent to the month of July, 1907.

" '9. That on or about the 17th day of September, 1907, plaintiff again demanded of defendant the payment to it of the sum of $12,233.69, the same being seventy-five per cent of the value of the materials and labor so as aforesaid incorporated in said building during the month of August, 1907, but defendant, without stating any reason, cause, or excuse for so doing, did then and there refuse, and has ever since refused, to pay seventy-five per cent, or any per cent, of said last named sum or any sum of money whatever.'

" '10.    That after such last mentioned refusal on the part of defendant on to wit, the 17th day of September, 1907, plaintiff, rescinded the said contract so as aforesaid made and entered into on said 29th day of June, 1905, by and between defendant and plaintiff, and did cease to furnish any materials or perform any labor for or upon or about said building after said 17th day of September, 1907.'

" '17.    That from and after the 1st day of September, 1906, down to and including the 17th day of September, 1907, the defendant paid plaintiff monthly as the work of the construction of said building progressed, excepting only for work done thereon during the months of August and September, 1907, without deducting or attempting to deduct from any of the said estimates of plaintiff, so as aforesaid presented by it, or making any claim for damages, liquidated or otherwise, by reason of any delay in completing said contract of June 29th, 1905, within the time fixed therein for completion thereof, to wit, September 1, 1906.    And in this connection the court finds the fact to be that both plaintiff and defendant well knew that said building could not be completed pursuant to the terms and provisions of said original contract pertaining thereto, unless and until defendant should first complete the work so as aforesaid damaged and destroyed, and that the conditions surrounding and affecting all building operations in said city and county of San Francisco were so uncertain and abnormal that neither plaintiff nor defendant was in a position to determine the time within which the said restoration work could be completed.    And the court further finds that shortly after said fire and earthquake, and at the time said last mentioned contract was so as aforesaid entered into, plaintiff and defendant then and there mutually agreed to carry out the work of the construction of said building according to the original plans and specifications thereof and under the terms and provisions of said original contract, except as to time of completing said work; and in this behalf the court finds that no time was agreed upon by and between plaintiff and defendant as to time of completing said building.'

" '18.    That, except as herein otherwise stated, it is not true that plaintiff failed and neglected, or failed or neglected, for more than a period of two years, or any other period of

time, to supply a sufficiency of workmen and materials, or a sufficiency of workmen or materials, or failed to prosecute the said work as provided in said contract with promptness and diligence, but in this behalf the court finds that plaintiff proceeded with said work with promptness and diligence from and after the 29th day of June, 1905, to and including the 17th day of September, 1907, and except as to time of performance complied with all of the terms and provisions of said contract on its part to be performed.'

" '19. . . . And in this behalf the court finds that plaintiff at the time said notice of September 3d, 1907, and the copy of said certificate of August 26, 1907, were so as aforesaid served upon plaintiff, there had been no delay upon the part of plaintiff in the work of constructing said building, nor had plaintiff failed to supply a sufficient number of workmen or sufficient materials to perform the work mentioned in said notice, or in said certificate, but on the contrary, the court finds the fact to be that all of the work specified in said notice and said certificate was being performed with promptness and diligence and in a manner to meet all of the requirements of the terms and provisions of said contract on the part of the plaintiff to be performed. That on the 26th day of August, 1907, and subsequent thereto, the general progress of the work of the construction of said building did not require the immediate furnishing of any ornamental iron work, the putting in of the sidewalk arches, the building of the sidewalks generally, the work on the elevator tops, or the work connected with the main roof generally. And, in this connection, the court finds that said last named work could have been performed within the period of thirty (30) days, while the interior work of the building was being performed, which interior work would necessarily require several months to perform. That after, as well as at all times prior to the receipt of said notice of September 3d, 1907, by plaintiff, plaintiff performed the plumbing work pertaining to said building with promptness and diligence; and also performed with promptness and diligence all other work pertaining to said building at all of the times and during all the periods of time from and after the 29th day of June, 1905, to and including the 17th day of September, 1907.'

" '20.   That on the 12th day of September, 1907, without
any fault on the part of plaintiff, defendant, without cause,
provocation or excuse, attempted to terminate the employment
of plaintiff to as much only of said work as is set forth in said
notice of September 3d, 1907, by entering upon said premises
by her agents and servants and by attempting to take from
plaintiff forcible possession of a portion of said premises and
also forcible possession of a portion of the materials thereon
and to employ others to finish such of the work only as was
and is set forth in said notice of September 3d, 1907, but no
attempt was made by said agents and servants of defendant
to take possession of the whole of said premises, or of all of
the materials thereon or to employ others to finish the entire
work of the construction of said building as set forth in said
contract of June 29th, 1905; defendant's said agents and ser-
vants were then and there resisted in said attempt to take
forcible possession of any portion of said premises, or forcible
possession of any of said materials, or to perform any labor
in said building by the agents and servants of the plaintiff,
whereupon the agents and servants of the defendant did then
and there desist from any further attempt either to take
possession of said premises or any of said materials to perform
any labor in, upon, or about said building.'

" '21.   That on the 17th day of September, 1907, the plain-
tiff ceased all of the work on said building under said con-
tract of June 29th, 1905, modified as aforesaid, and left said
work in an unfinished condition, but, in this behalf, the court
finds that on said last named day plaintiff rescinded said
contract upon the ground that defendant was indebted to
plaintiff for materials and labor incorporated in said building
during the month of August, 1907, amounting to $12,233.64,
for which it, plaintiff, had not been paid, after demand having
been duly made by plaintiff upon defendant for such pay-
ment.'

"Analyzing paragraph 16 of the contract, it means that
the architect having certified to the owner the refusal or
neglect of the contractor in any of the indicated particulars,
the owner, after three days' notice to the contractor to supply
the deficiency or make good the neglect, and upon the con-
tractor's failure after three days' notice so to do, may provide
any such labor or material and deduct the money from the

amount due or to become due to the contractor. The architect may further certify to the owner that the refusal or neglect of the contractor is sufficient ground to justify the owner in terminating the whole contract, in which case, upon the three days' notice from the owner to the contractor, so declaring the owner's intent, the owner 'may enter upon the premises, take possession of all materials thereon, and employ any other person or persons to finish the work.' In other words, this is a provision for a rescission of the contract at the instance of the owner for the default of the contractor. The provision of paragraph 16 of this contract touching the termination of the whole contract needs no further elucidation. The provision authorizing the owner to provide the necessary labor and material when the contractor fails so to do does not contemplate a termination of the whole contract, and does contemplate nothing more than the supplying of a sufficient number of properly skilled workmen or the supplying of a sufficiency of proper material to be used by the contractor under his contract, in the event that he himself shall have refused or neglected to supply them. As it contemplates that the material thus furnished by the owner shall be used by the contractor under his contract, so also it contemplates that the skilled workmen furnished by the owner shall also be employed by the contractor under his contract. Referring to the certificate of the architect, it will be noted that it conforms in all respects to the provisions of paragraph 16 of the contract, and that it is a certificate authorizing and empowering the owner not alone to supply labor and material, but also to terminate the contract because of the failure and neglect of the contractor properly to prosecute his work. Specifically, the architect's certificate enumerated six branches of the work as to which the contractor was delinquent. The notice by the owner called upon the contractor to supply a sufficient number of workmen and sufficient material to perform those six specified pieces of work, and declared that if the contractor failed, for the period of three days, to supply a sufficient number of workmen and sufficient materials to perform the work, and to prosecute the work with promptness and diligence 'the undersigned will terminate your employment for the said work, and will enter upon the said premises and take possession of all materials thereon and will employ others to finish

the said work.' But, springing from the nature of such certificates, their power for weal or woe, and the fact that they contemplate forfeitures and the right of rescission, the terms of the certificates themselves are strictly construed. In other words, to make such a certificate operative, there must be a substantial compliance by the architect with the terms of the contract touching its issuance. (*O'Keefe* v. *St. Francis Church,* 59 Conn. 551, [22 Atl. 325] ; *White* v. *Mitchell,* 30 Ind. App. 342, [65 N. E. 1061] ; *Charlton* v. *Scoville,* 144 N. Y. 691, [39 N. E. 394].) The same reasons call for the same strict construction of the notice following the architect's certificate which the contract requires shall be given by the owner to the contractor. By this it is not meant that any precise form of words is required in the notice, but the notice must be such as fairly and fully to advise the contractor of what the owner demands and what the owner will do in the event of a noncompliance with the demand. The notice given in this case misconceived the meaning and import of paragraph 16 of the contract. That paragraph does not contemplate a termination of the employment of the contractor for only a part of the work. As to any part of the work touching which, according to the architect's certificate, the contractor is delinquent, the owner may furnish the requisite labor and material, which shall be used by and charged to the contractor. But the owner may not oust the contractor from that part of the contract and undertake to perform it himself independent of the contractor. This is what the notice here declared that the owner proposed to do. Such a construction, we say, is foreign to the meaning of paragraph 16, and would lead to utter confusion and inharmony. It can be readily seen that it would be practically impossible to proceed with work under such conditions. If the contractor has become so delinquent as to justify the owner in terminating his contract, then, under the architect's certificate to this effect, the owner may do so, after notice. The authorization so to do was in this instance given to the owner by the architect's certificate, but the owner did not notify the contractor that she proposed to exercise her right in this regard.''

The consequences of this failure on the part of the owner to follow up the architects' certificate with a lawful notice to the contractor that its employment would be terminated, are

that the owner was not authorized to take charge of the work or premises, or any part thereof, as she attempted to do on September 12, 1907, that the plaintiff was justified in resisting such attempt, and that the alleged attempt of the owner, on September 14, 1907, to terminate the employment of the plaintiff under the contract, in accordance with paragraph 16 thereof, even if it had been proven that such attempt extended to the whole work instead of only parts thereof, would have been ineffectual and vain. In the light of this conclusion, we must consider whether or not the plaintiff was justified in rescinding the contract because of the owner's refusal to pay the money due to it for the work done during the month of August, 1907. The right of the plaintiff to recover fails unless it appears that it rightfully rescinded.

It is well settled that where the parties to a building contract thereby authorize the architect, as arbiter, to determine and certify the existence of a fact when such fact becomes material to a proceeding under such contract, the certificate of the architect, duly made, that the fact exists, is conclusive upon the parties with respect to the thing to be done to which such fact relates, or as to which, under the proceeding, it is to affect the rights of the parties, and that such certificate can be impeached as to such facts only for fraud, or for gross mistake amounting to fraud. (*Dingley* v. *Greene,* 54 Cal. 333; *Moore* v. *Kerr,* 65 Cal. 519, [4 Pac. 542]; *City Street Imp. Co.* v. *Marysville,* 155 Cal. 419, [23 L. R. A. (N. S.) 317, 101 Pac. 308].) There can be no doubt that if, in pursuance of said certificate, the owner had given a proper notice terminating the employment, the certificate, if not so impeached, would be conclusive evidence of the delinquency of the contractor in the particulars therein stated, in any controversy growing out of such termination. It is not, however, strictly speaking, a common law award. (*Church* v. *Seitz,* 74 Cal. 295, [15 Pac. 839]; *Foster* v. *Carr,* 135 Cal. 86, [67 Pac. 43].)

The object and purpose of paragraph 16, in this regard, was to provide a proceeding whereby the owner might terminate the employment in case the contractor failed in any respect to perform the contract. It does not purport to qualify or affect the right of the contractor to receive the moneys due him for work already done at the time of his failure,

unless the proceeding is carried to the extent of an actual discontinuance of the contractor's employment. To provide for that contingency the paragraph declares that "in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any *further* payment under this contract," until the work shall have been wholly finished by the owner. It will be seen that the right to receive the regular monthly payments under the 17th paragraph does not cease until, nor unless, there has been a valid termination of the employment in the manner provided and that such termination bars only the right to "any further payment." The certificate of delinquency is conclusive thereof for the purpose of authorizing a termination and for the purpose, after such termination, of authorizing the owner to refuse further payments under the contract. The certificate here given does not state that any of the work done was defective or not in conformity with the contract. All it declares is that part of the work had not been diligently prosecuted. Under the terms of the contract, the plaintiff was entitled, on the first day of each month, to a payment equal to three-fourths of the value of the work and materials put into the structure during the preceding month. The facts stated in the certificate had no bearing whatever upon the right of plaintiff to the September payment for the August work. No matter how slowly the work was carried on, the plaintiff, until its employment was lawfully discontinued under the contract, was entitled to the contract payments for the work properly done. It follows that the facts stated in this certificate, admitting for the present that it is conclusive, did not deprive plaintiff of the right to demand and receive payment for the August work, nor justify the owner in refusing to make said payment.

Paragraph seventeen of the contract, with regard to the monthly payments, provided "that before each payment, if required, the contractor shall give the architects good and sufficient evidence that the premises are free from all liens and claims chargeable to the said contractor; and further, that if at any time there shall be any lien or claim for which, if established, the owner of said premises might be made liable, and which would be chargeable to the said contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient to com-

pletely indemnify himself against such lien or claim." The requirement or demand for evidence, mentioned in the first part of this provision, was not made. At the time of the demand for payment for August work, there was a claim against the contractors in favor of the Western Expanded Metal and Fireproofing Company, on account of which Mrs. Butler might have withheld that payment, if she had so desired. The refusal to pay was not based on that fact, but on the fact that she then believed that she had lawfully terminated the plaintiff's employment. Neither the lack of evidence of freedom from liens, nor the existence of the said claim, was pleaded in the answer as an excuse for the refusal to pay. Under these circumstances the absence of a finding on the subject is immaterial. The amount of the claim is stated in the findings and judgment. But as the only relief given to that defendant is a direction that its claim be paid only out of the sum found due to the plaintiff, Mrs. Butler has no further substantial interest concerning it.

The findings do not, in terms, state that the architects did not certify in writing that the August work for which payment was demanded had been done to their satisfaction. The general finding is that plaintiff rescinded the contract upon the ground that the amount owing for August work had not been paid, "after demand having been duly made by plaintiff upon defendant for such payment." This finding appears to be sufficient to support the judgment, so far as this point is concerned. The evidence shows a state of facts under which the owner would not be authorized to insist that there was no architects' certificate that the work was satisfactorily done. It appears that the custom was for plaintiff, each month, to present to the architects an estimate of the work done and material placed during the preceding month, that this was understood to constitute a request to the architects to examine the work and certify that it was done to their satisfaction. Until September, 1907, this had always been done. When the September estimate was presented the architects said that they were instructed by the owner not to give the certificate. The owner also declared that she would not make any more payments. There was never any claim that the work for August had not been properly done, nor any suggestion that the architects' certificate was desired. The re-

fusal to pay was wholly based upon reasons having no relation to the character of the work. As matter of fact, the work for August was well done. The architects should therefore have given their certificate to that effect. Under these circumstances, the payment for the August work became due, notwithstanding the fact that the architects did not approve and certify to the work, the preliminary certificate must be considered as having been waived, and the demand for payment must be deemed to have been duly made. (*Coplew* v. *Durand,* 153 Cal. 281, [16 L. R. A. (N. S) 791, 95 Pac. 38] ; *Tally* v. *Ganahl,* 151 Cal. 421, [90 Pac. 1049] ; *Wyman* v. *Hooker,* 2 Cal. App. 40, [83 Pac. 79] ; *Antonelle* v. *Kennedy etc. Co.,* 140 ,Cal. 309, [73 Pac. 966] ; 30 Am. & Eng. Ency. of Law, 1245, 1249; 6 Cyc. 36.) The finding of a due demand is supported by this evidence. The refusal of the owner to pay for three-fourths of the August work was therefore unjustifiable and was a breach of the contract. As to the contractor, the consideration of the contract had thereby, to that extent failed. In such cases the refusal to pay is a sufficient cause for a rescission by the contractor and authorizes a suit upon the *quantum meruit* for the reasonable value of the work and materials by it incorporated into the building. (*San Francisco B. Co.,* v. *Dumbarton etc. Co.,* 119 Cal. 272, [51 Pac. 235] ; *Porter* v. *Arrowhead R. Co.,* 100 Cal. 502, [35 Pac. 146] ; *Golden Gate L. Co.* v. *Sahrbacher,* 105 Cal. 116, [38 Pac. 635] ; *Carlson* v. *Sheehan,* 157 Cal. 696, [109 Pac. 29] ; *Fairchild etc. Co.* v. *Southern R. Co.,* 158 Cal. 273, [110 Pac. 951].)

We are here met with the suggestion that a rescission without the consent of the other party cannot be made except by one who is not himself in default. The rule is usually stated in this general language. (*State* v. *McCauly,* 15 Cal. 458; *Fairchild etc. Co.* v. *Southern R. Co.,* 158 Cal. 273, [110 Pac. 951].) Where the respective obligations upon which each party is in default are dependent and concurrent, the justice and necessity of the rule is obvious. So, also, in cases where the rescinding party's default is so related to the obligation in which the other party has failed that it in some manner affects the performance thereof, or the duty of the other party to perform, the rule is plainly applicable. But no case which has been cited applies this rule to a delinquency of the rescind-

ing party which has no relation to the obligation of the other party, in respect of which the right of rescission is claimed, and which does not excuse, prevent, or interfere with his performance of that obligation, or affect or impair his duty to perform it. Nor have we found any case in which it has been claimed that the rule is thus applicable. It is, in truth, an application of the maxims that he who seeks equity must do equity and must come into court with clean hands. It is well understood that this rule does not apply to all derelictions by the complaining party, but only to a delinquency "connected with the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction." (1 Pomeroy's Equity Jurisprudence, sec. 399; *Lewis' Appeal,* 67 Pa. St. 166; *American Assoc. Limited* v. *Innis,* 109 Ky. 605, [60 S. W. 388]; *Rice* v. *Rockefeller,* 134 N. Y. 186. [30 Am. St. Rep. 658, 17 L. R. A. 237, 30 N. E. 907]; *Bethea* v. *Bethea,* 116 Ala. 272, [22 South. 561].) Here the default of the plaintiff, as claimed, was negative; it had not been diligent in performance. The contract provided a remedy for that neglect, a remedy which the owner did not pursue. The neglect specified in the certificate, still conceding its conclusive effect, did not, as we have said, in any way affect the liability of the owner to pay for the work actually done. The plaintiff's dereliction was not connected with the default in the payment or with the obligation to pay but was wholly collateral thereto. The rule referred to does not apply to this case.

There is another sufficient answer to the above suggestion. The court found that the allegations of the answer that the plaintiff had failed and neglected to supply sufficient workmen and materials and to prosecute the work with diligence were untrue. There is ample evidence to sustain these findings. The claim is that the certificate of the architects, above set forth, relating to the abortive attempt to terminate the contract, is conclusive as to the fact of such failure, not only upon any question properly arising in connection with the proceeding for the termination of the plaintiff's employment, or as to which it would be material, but also conclusive between the parties at all times and upon all occasions to which the fact certified to may relate, although upon a matter collateral to the proceeding in and for which the certificate was authorized,

and not in any way connected therewith or dependent thereon. We are of the opinion that it is not conclusive in a matter collateral to the proceeding in and for which alone it was authorized to be given. Its sole function was to serve as a basis for a notice terminating the contract. Upon any matter dependent on or arising out of that proceeding, it would be conclusive. But the proceeding failed for want of a proper notice and it thereupon lapsed and became wholly ineffectual. The certificate made to initiate that proceeding, being unauthorized for any other purpose, falls with it, at least so far as its conclusive effect as evidence upon collateral matters is concerned. (*Newall* v. *Elliott,* 1 Hurl. & C. 797.) At most it could be no more than *prima facie* evidence in any collateral matter. The court below properly held that it was not conclusive and was justified by the evidence in finding contrary to its statements of fact.

It is claimed that the plaintiff was in default in failing to complete the building on or before September 1, 1906, as the original contract provided, and upon this ground the defendant, Butler, claims liquidated damages under the contract at two hunderd dollars for each day's delay, amounting to one hundred and fifteen thousand dollars, or damages for loss of rents during the delay amounting to $113,433.27.

The court found, in effect, that after April, 1906, a new contract was made by the parties for the completion of the building, providing that it should be completed according to the original plan and specifications and under the terms of the original contract, except that no time of completion thereof was fixed, but the same was left indefinite. It also found other facts which, if true, would operate as a waiver of the claim for damages caused by the delay. If these findings are true it necessarily follows that no damages could be recovered by the owner for the delay in question. It is contended that these findings are contrary to the evidence. We think they are sufficiently supported. When the great fire of April, 1906, occurred, the building was partially completed. The fire destroyed everything in it that was combustible. It also for several months completely prevented the resumption of ordinary business in San Francisco. Under the contract, the owner was bound to restore the destroyed parts of the building and put it in such condition that the remainder of the work could be done.

She elected to do so and for that purpose she employed the plaintiff to do the work of restoration. She knew it could not be done until after September 1, 1906, the time fixed in the original contract for the completion of the entire building, but she did not specify any time within which the work of restoration should be completed. In fact, it was not completed until more than two months after the above date. She made no complaint of this delay whatever, but thereupon directed the plaintiff to proceed with the work and complete the building in accordance with the original plans. Thereafter she directed the work to proceed, made the monthly payments regularly as they became due and allowed the contractor to go on expending large sums of money in the building, without ever mentioning the fact, now claimed, that liquidated damages at two hundred dollars a day, or damages by loss of rents, from September 1, 1906, had been and were accruing, and without ever claiming or suggesting the right to deduct such damages from the monthly payments. The stipulation as to time and damages were both for the benefit of the owner and she could waive them if she desired. The suggestion that the supplemental agreement was oral and therefore was not effectual to alter the written contract, is disposed of by the fact that the new agreement for an extension of time was relied on by the plaintiff and was acted upon by it to such an extent as to be a practical performance thereof and sufficiently to estop the owner from denying either the making of the agreement for an indefinite extension or the waiver of the covenants aforesaid. This substantial performance of the oral agreement would make it lawful as an oral alteration of a written contract. Furthermore, the time of performance even when it is made of the essence, if it is once waived, sets the matter at large, and another date for performance can only be fixed by a definite notice, or by conduct equivalent thereto. (*Boone* v. *Templeman,* 158 Cal. 297, [139 Am. St. Rep. 126, 110 Pac. 947].) The facts found clearly show a waiver of the right to demand damages for delay in completion after September 1, 1906. The evidence still more clearly establishes such waiver.

The question whether the demurrers to the answers of the plaintiff and the other defendant to the amended cross-complaint of Mrs. Butler, on the ground that they were uncertain

and ambiguous, were properly overruled, is of no importance. The issues arising upon the cross-complaint were all tendered by the affirmative allegations of her answer, the evidence relating thereto was fully presented, and the findings embrace them all. If the answers were uncertain or ambiguous, as claimed, it is clear that the owner was in no wise prejudiced or misled thereby.

The judgment and order are affirmed.

Henshaw, J., Angellotti, J., Lorigan, J., Sloss, J., and Melvin, J. concurred.

Rehearing denied.

Beatty, C. J. dissented from the order denying a rehearing, and filed the following opinion thereon, on June, 27, 1913.

BEATTY, C. J.—I dissent from the order denying a rehearing. The validity of the judgment in favor of the contractor depends upon his right to rescind the written contract, and he had no right to rescind if it was not a breach of the contract on the part of Mrs. Butler to refuse payment of his demand for the August work. She had a perfect right to refuse payment of that demand if, as is conceded, there was a claim of the Western Expanded Metal and Fireproofing Co.—as subcontractor—then existing for more than the contractor's claim. And the fact that she did not put her refusal on that ground is of no consequence unless her failure to do so in some way raises an estoppel.

I cannot see that it does.