[Civ. No. 2639.   First Appellate District, Division Two.—April 29, 1919.]

C. E. TREMBLE, Plaintiff and Respondent, v. G. E. TUMAN, Defendant and Respondent; UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant and Appellant.

[1] BUILDING CONTRACTS—ABANDONMENT OF WORK—DETERMINATION OF JURY — SUFFICIENCY OF EVIDENCE.—In this action by the owner against the contractor and his surety for damages for breach of a building contract, the determination of the jury upon the issue as to the abandonment of the work by the contractor was supported by ample evidence.

[2] ID.—WHAT CONSTITUTES ABANDONMENT.—In law, the word "abandonment" does not necessarily imply a willful or culpable disregard of the contractor's obligations. It may, as in this case, be applied to a condition of affairs where, through misfortune, the contractor is unable to finance his contract, or by reason of his mental or physical incapacity be precluded from carrying on his work or attending to the business incident to it.

APPEAL from a judgment of the Superior Court of Alameda County. Wm. S. Wells, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thomas, Beedy & Lanagan for Defendant and Appellant.

John W. Stetson for Plaintiff and Respondent.

BRITTAIN, J.—In a suit by the owner against the contractor and his surety for damages for breach of a building contract, judgment was entered in favor of the owner and against the contractor, and in favor of the surety against the owner. The plaintiff appealed on the judgment-roll from that part of the judgment in favor of the surety. Prior to the establishment of two divisions thereof, the district court of appeal of the first appellate district affirmed the judgment. On rehearing, the supreme court reversed both the decision of the district court of appeal and the judgment, directing the trial court to enter judgment in favor of the owner and against the surety. (*Tremble* v. *Tuman*, 175 Cal. 696, [167· Pac. 142].) From the judgment so entered the surety appeals, bringing up a bill of exceptions. The principal contention is that the evidence does not support the judgment.

The building contract was made in May, 1911, for the erection of a building to cost thirty thousand dollars. Coincident with its execution, the appellant surety company executed its bond in the sum of seven thousand five hundred dollars to the owner for the faithful performance of the contract. The plaintiff alleged abandonment of the work by the contractor on October 24, 1911, and damages amounting to $7,894.10. She prayed for judgment of seven thousand five hundred dollars against the contractor and the surety. The suit was commenced in June, 1913. The issues of fact were submitted to a jury, which returned a general verdict against the defendants jointly for five thousand dollars and against the contractor alone for $850. To four questions submitted to the jury it answered: (1) The owner's architect did not delay the contractor's work by failure to furnish plans, specifications or working detail drawings; (2) Either the owner or her architect ordered the contractor to do extra work, but no delay was caused thereby; (3) The contractor did not have men working on the building every working day between October 24, 1911, and November 14, 1911; and (4) to the question, "Did Mrs. Tremble or Mr. Reed [her architect] take the job away from the defendant contractor and finish

the building herself? If so, when did she take over the job,"
the answer was, "Yes. November 14, 1911."

The surety moved for a judgment according to the special
verdicts and not in accordance with the general verdict, on
the ground that the two verdicts were inconsistent. The
motion was granted and the first judgment entered in favor
of the surety. That judgment was reversed by the supreme
court. The only matter necessarily decided on the first ap-
peal was that under the pleadings the general verdict and the
special verdicts were not inconsistent, because the issue of
abandonment was presented to the jury and determined by
it in the general verdict. This is the law of the case. The
determination is conclusive if there was any evidence to sus-
tain the general verdict.

[1] On behalf of the appellant it is contended there was no
abandonment merely by reason of the failure of the con-
tractor to act under a notice referring to section 14 of the
contract, and, further, that, apart from abandonment based
upon the construction of that section of the contract, there
was no evidence of abandonment to support the general ver-
dict. Section 14 provided that should the contractor fail or
refuse "to supply a sufficiency of materials or workmen to
complete the contract within the time limited herein . . . for
a period of more than three days after having been notified
by the owner in writing to furnish the same, the owner shall
have power to furnish and provide said materials or work-
men to finish the said work; and the reasonable expenses
thereof shall be deducted from the amount of the contract
price." The appellant presents a lengthy argument upon
the interpretation to be given to this clause and relies on a
case where a similar provision was construed. (*American-
Hawaiian Engineering & Construction Co.* v. *Butler,* 165 Cal.
497–510, [Ann. Cas. 1916C, 44, 133 Pac. 280].) On behalf
of the respondent, it is contended the two cases may be dis-
tinguished. It is not necessary to determine the question
thus presented. The determination of the jury upon the issue
of abandonment is supported by ample evidence irrespective
of the provisions of section 14 of the contract.

Various witnesses, some testifying for the plaintiff and
some for the defendants, made statements of facts which are
summarized below. The contractor was sick. He visited the
work only two or three times. One Graves assumed charge

of the work for the contractor. The work was delayed. Some of the materialmen were unpaid and refused to furnish further material. Notice was given to supply men and material on October 24, 1911, after which the contractor had no further consultations about the building or the further progress in connection with it, and gave no directions or orders. The average number of men employed on the work for a month was about three, at times as low as two. The work being done was practically nothing, and the job was at a standstill. The subcontractors were not being paid; they were in charge of Cook, the foreman. He was not half working; he was getting no money and was sore. He was not there all the time. On the Monday following the giving of the notice to supply men and material, and on the succeeding Saturday, and the Monday following that, there was no one on the job, nor was there anyone working on November 14, 1911, when the owner took charge of the working hours. The architect testified that Graves and he arrived at the conclusion that Tuman could not make any further progress. Tuman had contracted to finance the work in a particular way.. He failed to finance the work in that way, and was unable to finance it in any other way.

As against the evidence summarized above, counsel for the appellant admit Mr. Tuman's financial difficulties, but argue there is no evidence that because of such fact Mr. Tuman ever decided to abandon the work, and that the evidence of his financial condition did not show it was impossible for Tuman to complete the work. On the contrary, it is argued, that while Graves, as Tuman's agent, had difficulty in securing funds and one or two of his attempts to secure them failed before the plaintiff finally took the work out of the hands of Tuman, Graves was successful in making financial arrangements which would insure the completion of the work, though possibly not pay all laborers or materialmen or subcontractors.

This arrangement was one made by Graves with three others, by which on November 6, 1911, thirteen days after the notice was given, ten thousand dollars was deposited in the Crocker Bank in the name of G. E. Tuman Company, a corporation. The building contract was with Tuman individually. He did not participate in the formation of the corporation and was not a director until after his recovery

in the following January. The corporation was formed primarily for the purpose of assisting Mr. Tuman in financing his matters while he was financially unable to attend to them himself. His financial difficulties related somewhat to the whole volume of the work that he was doing. The corporation was not to take over the work and the directors of the corporation were to pass on any of Mr. Tuman's bills that were presented for payment. Between the date of the notice and that when the owner took over the work, Reed and Graves had consultations in which Graves assured Reed he hoped to be able to finance the work, but finally, according to the evidence of Mr. Reed, when the latter told him the owner was going to take over the work, Graves said that was the only thing which could be done, that he could not get any money for anything, and that he could not get any money to complete the tile contract; that he could not get any money to pay labor, and that his hands were practically tied. He did not tell Reed he had made arrangements for money for the tile contractor. He never consented in so many words that Mrs. Tremble should take the job out of his or Tuman's hands, nor did he ever object to her doing so.

[2] Counsel for the appellant admit it would be impossible for a contractor to avoid liability for having abandoned the work by merely keeping sufficient workmen on the job to sustain the appearance of continuance of the work, but they argue that abandonment is a question of intention. It may be shown by conduct. In law, the word "abandonment" does not necessarily imply a willful or culpable disregard of the contractor's obligations. It may, as in this case, be applied to a condition of affairs where, through misfortune the contractor is unable to finance his contract, or by reason of his mental or physical incapacity be precluded from carrying on his work or attending to the business incident to it. The cases cited by the appellant upon this subject lay down no other rule. Apart from any question of the interpretation of section 14 of the contract, the most that could be said upon the subject of abandonment is that the jury determined the fact upon conflicting evidence. On appeal this court is bound by such a determination.

It is contended on behalf of the appellant that abandonment cannot take place unless the contractor intends to abandon; in other words, unless he expressly or impliedly

agrees to quit. It is further argued that the contractor did agree to quit, and, therefore, the contract was abrogated so that the surety was released; further, that if the contractor did not agree to quit or intend to abandon the work, the owner's interposition amounted to a prevention of performance on the part of the contractor, by which the surety was released. From this it would appear the position of the appellant on the question of abandonment is that the contractor did not agree to quit, and on the question of the surety's liability that he did agree to quit; further, that upon whichever of these two positions the court may stand, the result will be the release of the surety. No true dilemma is presented. The fallacy is in the shifting positions. Either the contractor abandoned the work or he did not. The jury determined that he did. The surety is bound by that determination.

The judgment appealed from is affirmed.

Langdon, P. J., and Haven, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 29, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 26, 1919.

Angellotti, C. J., Shaw, J., Wilbur, J., and Olney, J., being all the justices present, concurred.