(60 App. Div. 161.)

### JONES et al. v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. April 29, 1901.)

1. CONTRACTS—TERMS—COMPLIANCE—SUPERVISOR'S DECISION—CONCLUSIVENESS.

     Where a contract to erect a school building provided that the superintendent of school buildings should decide all disputes concerning the execution of the contract, and that his decision should be final, in the absence of fraud or palpable mistake, the superintendent's decision that

the plaintiffs were not proceeding with the work in the manner pre-scribed by the contract was conclusive on the parties.

**2. SAME—SUPERINTENDENT'S DECISION—JUSTIFICATION.**

A contract for a school building provided that the superintendent of school buildings should decide all disputes as to the execution of the work under the contract, and that the building should be completed within 300 working days. The contract was made December 20, 1898, .and the. building was to cost $193,000. On June 2, 1899, the contractors had driven the piles for the foundation, and partly completed the exca-vating, and delivered a small amount of stone, but at no time had em-ployed more than 20 men, and part of the time only 3. *Held*, that the superintendent was justified in deciding that the contractors would not complete the building in 300 days.

**3. SAME—WORK—INSPECTION—SUBORDINATE OFFICERS.**

Where plaintiffs agreed that all disputes as to the work to be done under the contract for the erection of a school building should be decided by the superintendent of school buildings, whose decision should be final, the fact that the inspection of the work was intrusted to subor-dinates, who reported to the superintendent, did not prevent the board of education from relying on a decision of the superintendent that the con-tract was not being executed in accordance with its terms.

**4. SAME—CONTRACTORS' SURETIES—RIGHTS.**

Where a contract for the erection of a school building provided that all disputes as to the work should be decided by the superintendent of school buildings, and that, in case he decided that the work was not being properly performed, the school board, on three days' notice to the contractors, might forfeit the contract, and that it should then be void as to the sureties, a decision of the superintendent that the work was not being properly performed was conclusively binding on the sureties.

**5. SAME—CONTRACT—FORFEITURE—WAIVER.**

A contract for erection of a school building provided that, if the work was not performed as prescribed, the board of education, on three days' notice to the contractors, might forfeit the contract. The board of education, after giving three days' notice of a forfeiture, offered to allow the contractors to complete it on certain conditions, which were not accepted. *Held*, that the offer of the board did not constitute a waiver of the forfeiture.

**6. SAME—SURETIES—WORK—COMPLETION—OFFER.**

Where a contract for the erection of a school building was forfeited because of the contractors' failure to complete it within the prescribed time, a request by the contractors' sureties that another be allowed to complete the work did not constitute an offer by them to complete it, and hence the forfeiture was not waived as to them.

**7. SAME—EVIDENCE—ADMISSIBILITY—HARMLESS ERROR.**

Where a contract for a school building provided that it should be com-pleted within 300 days, and that any disputes should be decided by the superintendent of school buildings, the admission of evidence of the con-tractor, who finished the work after the forfeiture of plaintiffs' contract, that plaintiffs could not have completed the building at the rate they were working within the 300 days, was harmless, though the evidence was incompetent.

Appeal from trial term, New York county.

Action by John W. Jones and another against the city of New York and the board of education of the city of New York. From a judgment in favor of. defendants (65 N. Y. Supp. 747), plaintiffs ap-peal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

James M. Gifford, for appellants.
Terence Farley, for respondents.

RUMSEY, J.   The plaintiffs are co-partners, doing business as contractors in the city of New York.   On the 20th of December, 1898, they made a contract with the board of education of that city, by which they agreed to build a school house at the corner of Hubert and Collister streets for $193,931.   The plaintiffs allege that they proceeded with the work in accordance with the contract, and were ready to complete the building at the time specified, but that on the 6th of June, while the work was in progress, they were served by the board of education with a written notice that the board elected to rescind the contract.   They allege that they called at various times upon the board for permission to go on with the work, but were not allowed to do so.   They allege that the delay in proceeding with the work was due to some extent to the failure of the board to test the samples of the materials to be used in the building, and that by the action of the board they were forced to withdraw from the work and abandon it, and that thereby they were injured in the loss of their profits to the amount of $30,000, and that their credit and business were injured to the amount of $70,000, and they demand judgment for $100,000.

The defense was that by the contract it was agreed that if the plaintiffs at any time refused or neglected to furnish the proper materials, or to proceed with the work and furnish a sufficiency of workmen, or should fail to prosecute the work in a prompt or diligent manner, after three days' notice in writing given by the committee on buildings to the plaintiffs, the party of the second part, the contract should be avoided and forfeited, and the board should thereupon have the right to employ other persons to perform the work, and for any increase in the price necessary therefor the plaintiffs and their surety should be liable.   It is alleged that it was further provided in the contract that, to prevent all disputes and litigation, it was agreed that the superintendent of school buildings should decide any question that might arise concerning the execution of the contract, or the work to be done or the materials to be furnished, and that his conclusion should be final and conclusive upon the contractors.   It is further alleged that in May, 1899, the plaintiffs failed to supply a sufficiency of workmen and materials, and failed to prosecute the work as required by the contract, and in consequence a resolution was passed by the committee on buildings of the board of education on the 29th of May, 1899, that the three-days notice be given to the plaintiffs to the effect that, if they did not make satisfactory progress and provide sufficient workmen and materials to prosecute the work with promptness and diligence, in pursuance with the contract, then the board would declare the contract void, and would enter upon the premises.   This notice was served upon the plaintiffs in the manner provided in the contract, and it is alleged that they did not comply with it, and that thereupon they were advised that the contract was at an end.   It is further alleged that, after the three-days notice had been given to

the plaintiffs, a proposition was made to them by the board of education, by which the board was to withdraw the notice, and the plaintiffs were to go on and prosecute the work in accordance with the contract, but that they refused to accept the proposition, and refused to do anything more than under the contract. A counterclaim was set up in the answer to the effect that, after the plaintiffs refused to perform their contract, the board of education were forced to and did relet the contract at a price of $225,459, that being the lowest bid, which was $31,528 more than the price which was to have been paid to the plaintiffs under their contract, and judgment was asked against them for that amount. On the trial the plaintiffs' complaint was dismissed, and the defendants had judgment for the counterclaim, and this appeal is taken from that judgment.

It is not denied that on the 29th of May, 1899, the board passed the resolution to give the three-days notice as provided for in the contract, and that that notice was given to O'Connor, one of the plaintiffs, on the 2d day of June. He was thereby advised that if he did not make satisfactory progress, and furnish the materials to complete the work, the board would enter upon the premises, and declare the contract void and forfeited because of their noncompliance with its terms. It is conceded that on the 6th of June, four days after the notice was given to O'Connor, the board took possession of the work in pursuance of the authority which they had after the service of·the three-days notice. It is claimed by the plaintiffs that this notice was not justified, because the conditions warranting it did not then exist. It is not denied that the superintendent of school buildings determined that the contractors were not proceeding with the work in a proper manner, and that they were not employing sufficient men, and were not furnishing sufficient material, so that the work could be completed in accordance with the contract, and on the 29th of May so reported to the committee on buildings. It might be enough to say with respect to this matter that by the terms of the contract the superintendent was made the final arbiter as to the proper execution of it, and, when he decided that the plaintiffs were not proceeding with its execution in the manner prescribed, his decision, in the absence of fraud or plain and palpable mistake, is conclusive, and no further question can be made about it. It is not claimed that there is any fraud on the part of the superintendent, although some testimony was given by reason of which the plaintiffs claim that as a matter of fact the superintendent was mistaken in his conclusion that the plaintiffs were not proceeding with the work properly, in time to complete it within the time prescribed. But this evidence does not warrant any such conclusion. By the terms of the contract, it was expressly required that the plaintiffs should begin the work forthwith upon its execution. It was in fact executed on the 20th of December, 1898, and it is conceded that they began work on the 24th of January, 1899. No point seems to have been made by the defendants that the work was not begun immediately after the 20th of December, but they seem to have been willing that the time for the completion of the contract should run from the 24th of January, instead of from the

70 N.Y.S.—4

time the contract was approved. By the terms of the contract, it was to have been completed in 300 working days after it was commenced. That should have given them practically a whole year in which to finish the work. There was no dispute as to the amount of work which had been done down to the 2d day of June, when the notice was given. The excavation had not been entirely completed. The piles for the foundation had been driven, but were not prepared to receive the concrete, which was not set. Very little stone had been delivered for the foundation, and none had been laid; for the report of the inspector shows that the first stone was set on the afternoon of the 7th of June, five days after the notice was given. The number of men employed up to that time was never more than 20, and usually from 3 to 16. The contractors state that 50 per cent. of the work had been done on the 2d of June. Other witnesses testify that only 5 per cent. had been completed. It is very clear that the estimate of the contractor was much too large. His statement is that by far the more difficult portion of the work was the making of the excavation, driving the piles, and laying the foundations, but, so far as can be judged from the testimony, only a small portion of that work was done. The ironwork had been ordered, and a very little had been made, but none had been inspected or delivered. Practically nothing else had been done. Upon the whole case, it is quite evident that the conclusion of the superintendent of school buildings, that at the rate at which it was proceeding it was improbable that the building would be finished within the 300 days allowed by the contract, was justified by the condition of affairs.

It is said that the defendants had no right to rely upon this determination, because Mr. Snyder, the superintendent, had delegated the duty of inspection and determination to someone else. But that is not true. It is quite true that he himself, as he admits, did not personally inspect the work from day to day, but he had been kept informed by his inspectors as to the condition of the work, and there is no dispute that the inspectors told him all about it; so, although he did not get his information first hand, he did have accurate knowledge, which enabled him to decide correctly as to the matters submitted to him. It is to be assumed that there was no mistake in the conclusion reached by Mr. Snyder, and that, as his determination was made by the contract conclusive upon the plaintiffs, they were bound by it. The sureties also were bound by that determination. They were parties to the contract. It was expressly provided by the clause in question that the three-days notice should be given to the parties of the second part, who were Jones and O'Connor, the contractors, and it is conceded that the notice was actually given to O'Connor in the manner prescribed in the contract. The express agreement of the sureties was that, whenever that notice should be given, the contract should be void, as to themselves as well as to the contractors. So, as to all these matters, they occupied no better position than did the contractors themselves, and the contract was void as to them, as it was to the contractors.

The only question, then, remaining, is whether the offer by the board of education to the contractors that they might go on and com-

plete the work, with a concession that the time that had elapsed between the 2d of June, when the notice was given, and the 27th of June, when it was withdrawn, should not be counted as a part of the 300 days, operated as a waiver of the forfeiture that had already occurred. If that offer had been accepted by the plaintiffs, there can be no doubt that the contract would have been restored; but they refused peremptorily to take advantage of it, and, having done that, they are not now at liberty to say that the contract is not at an end. It is claimed, however, that, the sureties having offered to complete the contract, the forfeiture, as to them, was waived. But they never did offer. All that was done in that behalf was done by Mr. Winter, who said that he went to the board of education, and asked permission that one Hay, the indemnitor of the sureties, should be allowed to continue the work. He says expressly that he represented Mr. Hay, and never had anything to do with the surety company, nor did he represent it. The contract was at an end. The surety company were no longer at liberty to do any work upon it. There was no obligation on the part of the city or the board of education to make a new arrangement with them, unless they saw fit. Most assuredly, there would have been no propriety in making an arrangement with Hay, who did not represent the surety company. Therefore there is no question as to the rights of the surety company, which never did any act with respect to the matter.

We have examined the exceptions taken to the rulings upon the admission of testimony, and only one of them requires particular mention. The new contractor was asked whether, in his judgment, it was possible for the plaintiffs to have completed the contract in what remained of their 300 days allowed to them for it. That evidence was admitted over the plaintiffs' objection. We agree with the plaintiffs that it was not competent testimony, but it was not of the slightest importance. The only question was what conclusion had been reached by Mr. Snyder upon that matter, and what were the facts upon which he based his conclusion. The judgment of any other person was not material, because the parties had agreed to be bound by the decision of Mr. Snyder.

We find no other point requiring consideration, and upon the whole case we are clear that the judgment was correct, and it should be affirmed, with costs. All concur.