MAHONEY v. OXFORD REALTY CO.

(Supreme Court, Appellate Division, First Department. July 13, 1909.)

1. CONTRACTS (§ 300*)—PERFORMANCE—TIME—DELAY.

Where a contractor for the superstructure of a building did not object to a delay caused by the failure of the contractor for the foundation to complete the same in time, the only effect of the delay was to extend the time of performance by the contractor for the superstructure for a period equal to the time he was thus delayed in commencing the work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1377; Dec. Dig. § 300.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CONTRACTS (§ 287*) — PERFORMANCE—TERMINATION BY OWNER—ARCHITECT'S CERTIFICATE.

A building contract provided that if a contractor failed to prosecute the work with promptness, and such failure should be certified by the architect, the owner after three days' notice to the contractor should be entitled to terminate the contract and complete the work, charging the contractor with the cost of such completion against the balance due on the contract price. *Held*, that where, by reason of a lockout .concerning which no written demand for extra time was made as required by the contract, the contractor failed to complete the work of plastering with diligence, and the architect certified that the owner was entitled under the contract to terminate it and finish the performance, which he did after due service of notice, such architect's certificate, in the absence of fraud, bad faith, or unreasonable or arbitrary action, was conclusive of the question of unreasonableness of the contractor's delay in an action on the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1331; Dec. Dig. § 287.*]

3. CONTRACTS (§ 287*) — BUILDING CONTRACTS—ARCHITECT'S CERTIFICATE—DEDUCTION.

In case of substantial performance of a building contract, an architect's certificate, reciting a substantial performance of the contract, does not prevent deduction for slight variations and omissions.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1331; Dec. Dig. § 287.*]

4. CONTRACTS (§ 324*)—BREACH—ACTION.

Where, after the termination of a building .contract by the owner, for the contractor's failure to prosecute the work with diligence, the contractor sued for breach of the contract before completion of the work by the owner, he could only recover on the theory of the wrongful termination of the employment.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 324.*]

Houghton, J., dissenting.

Appeal from Trial Term, New York County.

Action by Robert J. Mahoney against the Oxford Realty Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and a new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Morgan J. O'Brien, for appellant.

M. Linn Bruce (Claude Gignoux and William J. Reid, on the brief), for respondent.

LAUGHLIN, J.    This action is brought to recover damages for the breach of a contract made between the parties and reduced to writing and signed by them on the 26th day of October, 1903. The contract provided for the construction by the plaintiff of an .11-story hotel building on premises known as Nos. 70, 72, and 74 West Fifty-Fifth street in the borough of Manhattan, New York, according to plans and specifications, for the gross sum of $48,000. It was provided that the work should be completed on June 1, 1904, and it was understood, although not stated in the agreement, that the foundation would be ready for plaintiff to proceed about the middle of November, 1903. The contractor who was constructing the foundation disappointed the

owner, and the foundation was not ready for the performance of the work by plaintiff until about the 3d day of May, 1904. Plaintiff neither refused to proceed nor objected to this delay, and commenced the work after May 1, 1904, on being notified so to do by the architect, without any further agreement or understanding.

In these circumstances, the only effect of the delay was to extend the time of performance for a period equal to the time plaintiff was thus delayed in commencing the work, and perhaps such additional time as might necessarily be required on account of the postponement of the commencement of the work. The plaintiff alleges that he entered upon the performance of the work, and continued the same with due diligence in all respects as provided by the contract and plans and specifications, but that on the 11th day of October, 1904, the defendant took possession of the work and premises and removed the plaintiff and his agents therefrom and terminated the contract and refused to permit the plaintiff to further perform the same. The plaintiff further alleges that the acts of the defendant in terminating the employment of the plaintiff and in taking possession of the premises "were in assumed compliance and pretended conformity with the provisions and terms of article 5" of the contract, but were actually in violation thereof, because he at no time refused or neglected to supply a sufficient number of properly skilled workmen or materials of the proper quality, or to prosecute the work with promptness and diligence, or to perform any obligation resting upon him by virtue of the contract, and that the defendant failed to give the plaintiff the three days' written notice before terminating his employment and taking charge of the work, required by the contract, and no certificate was made by the architects as required by said article 5 of the contract. The damages which the plaintiff, according to the allegations of his complaint, claims to have sustained and seeks to recover, are the difference between the value of the work done on the contract, which is alleged to have been the sum of $40,137.56, and the amount paid on account of the contract work, which is alleged to have been the sum of $30,042, and the loss of profits which the plaintiff would have made had he been permitted to fully perform the contract, which he alleges would have been the sum of $1,500, aggregating in all the sum of $11,596.56, for which, together with the interest thereon from the 11th day of October, 1904, he demands judgment. The plaintiff recovered a verdict for $10,-309.78 damages, to which was added interest from October 11, 1904, making the verdict as finally recorded $12,217.78.

Article 5 of the contract, to which reference has been made, provides as follows:

"Art. 5. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects, the owner shall be at liberty, after three (3) days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the

employment of the contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties."

The architects were Israels & Harder. On the 10th day of October, 1904, they made, executed, and delivered to the defendant a certificate, as follows:

"In accordance with the provisions of article 5 of your contract under date of August 26, 1903, with Robert J. Mahoney, we hereby certify that said Robert J. Mahoney has failed to supply a sufficiency of properly skilled workmen and materials on the work called for under the above contract, upon which he has been ordered to proceed by repeated notices duly served upon him in accordance with the contract, and you are now therefore warranted in terminating the employment of said Robert J. Mahoney as the contractor for the work and materials mentioned in the contract, and yourself to enter upon the premises and take possession for the purpose of completing the work and to employ any other person or persons to finish the same and to provide the materials therefor.

"Very truly yours,                                    Israels & Harder."

On the following day the defendant caused a notice to be served on the plaintiff, reciting that the defendant having duly given the plaintiff the three days' notice required by the contract, and that the artects having duly certified that the "refusal, neglect and failure" on the part of the plaintiff "to supply a sufficiency of properly skilled workmen and to prosecute the work with promptness and diligence" constituted sufficient ground for the termination of the contract, the owner thereby terminated the contract and had entered upon the premises and taken possession thereof for the purpose of completing the work in accordance with the provisions of the contract. Prior to this time, and on the 3d day of the same month, the architects delivered to the defendant a certificate to the effect that the plaintiff had failed to supply a sufficiency of properly skilled workmen and materials on various parts of the work upon which he had been ordered by them to proceed, and particularly on the plastering, and they recommended that a formal letter, which they inclosed for the signature of the company, be sent to him giving him the three days' notice provided for in said article 5 of the contract. Formal notice in accordance with the provisions of article 5 of the contract was thereafter and on the same day duly served on the plaintiff, notifying him that, on account of his failure to supply "a sufficiency of properly skilled workmen and materials" on the plastering and other portions of the work, he was thereby given the three days' notice provided for in article 5 of the contract, and notified that, unless the work specified was proceeded with within three days—"that is, by

October 7, 1904"—the defendant would have the work performed by others and charge the expense thereof to his account. A similar notice, based on a like certificate, had been served on the plaintiff on the 27th day of August, 1904, upon which, however, defendant took no further action, although the work was not resumed and prosecuted as required.

The work was commenced by the plaintiff under the contract on the 3d day of May, 1904. On the 18th day of July, 1904, the plaintiff, after doing part of the plastering, subcontracted the plastering work to one Colleran, who commenced the work of plastering on that day, or the day after, and continued it at intervals until the 6th day of August, 1904, when a lockout was declared by the Employés' Association. With respect to strikes and lockouts the contract provided as follows:

"Should the contractor be delayed in the prosecution or completion of the work by the act, neglect or default of the owner or the architects or of any other contractor employed by the owner upon the work or by any damage caused by fire, lightning, earthquake, cyclone or other casualty for which the contractor is not responsible or by strikes or lockouts caused by the acts of employés then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid."

Plaintiff was a member of the Employés' Association, which took the action which resulted in the union plasterers having to leave the work, and thereafter he was only able to employ a few less competent plasterers, and their work was somewhat impeded by the men who had been locked out. It does not appear that the employés were responsible for the lockout, nor was it shown that any claim was made in writing to the architects for consideration on account of the lockout as provided in the contract, and therefore this clause of the contract does not aid the plaintiff. The architects, according to testimony introduced by defendant, had had occasion to complain of delay on the part of the plaintiff in doing the plastering from time to time, commencing with the 12th day of July; but plaintiff testified that he received no complaint other than those in writing to which reference has been made. No plastering was done between the 8th day of August, 1904, and the 8th day of September, 1904. On September 8th, 9th, and 10th, three plasterers worked; on the 13th, four; on the 15th, two; on the 16th, six; on the 17th, four; on the 19th, three; on the 24th, two; on the 26th, three; on the 27th, six; on the 28th, six; on the 29th, six; on the 30th, eight; on October 1st, eight; and on no other day until October 7, 1904, did any plasterers work on the building. On October 7th five plasterers resumed work; on the 8th, six; on the 10th, five; and on the 11th, before the termination of the contract, nine.

On the 21st of September, the architects directed plaintiff to withdraw the "few" plasterers he had on the work in order to expedite the work by permitting the construction of the electrical work by the electrician with the construction of the remaining partitions. The defendant gave evidence tending to show that, after terminating the employment of the plaintiff and taking charge of the work itself, it completed the same at the reasonable cost of $15,249.87, which was

duly certified by the architects as required by said article 5 of the contract, and it concedes its liability to the plaintiff for $850.91, owing to its obligation to account to him for the difference between the cost of completion and the amount unpaid on the contract at the time of its termination. The plaintiff has recovered upon the theory of his complaint. The case was tried upon the theory that, without showing either fraud or bad faith upon the part of the architects, the plaintiff was at liberty to ask the court and jury to disregard the action of the architects in determining that he did not proceed with the work with due diligence and did not furnish a sufficient number of men to insure the completion of the work within the time specified by the contract, and to decide these questions de novo and award him damages if they reached a different determination on those questions of fact.

The learned counsel for the respondent contends that, although the architects and the defendant acted in good faith in making the certificates and in terminating the employment of the plaintiff, still the question is open to review de novo as to whether the contractor did refuse or neglect to supply a sufficient number of properly skilled workmen or materials of proper quality, or did fail in any respect to prosecute the work with promptness and diligence, or did fail in the performance of any of his obligations under the contract. No case is cited in this or any other jurisdiction which is decisive of the question. At the outset it is important to bear in mind that the construction for which the plaintiff contends would render the provisions of article 5 of the contract of practically no value to the owner, but of great advantage to the contractor. Without such a provision, where the contractor requires the work to be performed with such diligence as to insure its completion within the time specified, the owner might at any time exclude the contractor from the premises and finish the work himself, and in that event, if he should be able to establish that the contractor was guilty of a breach of the contract, in that he was not proceeding either with respect to the number of men employed or otherwise to insure completion on time, he would defeat a recovery by the contractor for any balance unpaid on the contract, and he might counterclaim for any damages sustained; and, should he be benefited by having the work cost less, he would be under no obligation to account to the contractor for the difference between the balance unpaid on the contract and the cost to the owner to complete the work.

This provision, if construed as it has been on the trial of this action, is in effect a trap for the owner, and gives the contractor an advantage which he would not ordinarily have without such a provision. According to the construction for which the respondent contends, he practically runs no risk in failing to perform his contract. He may employ one man, where it is manifest that it would require twenty to complete the work as required by the contract, and rest on the assurance that the owner must submit to his unreasonable conduct; or, if it become unbearable, all that the owner may do, at most, is to take charge of the work, which will leave the contractor in a position to contend in the first instance that he is entitled to damages on account of the wrongful termination of his contract, which

would be the balance unpaid on the contract, less the amount it would have cost the contractor to have completed the work; and, if he fail in that, the owner must account to him for the difference between the balance unpaid on the contract at the time of his discharge and the cost to the owner of completing the work, which would give him in effect profits practically the same as if he had completed the work himself, for he would not be bound by the amount which the owner had expended in completing the work, unless the expenditures were made in good faith and in the exercise of reasonable care. Watts v. Board of Education, 9 App. Div. 143, 41 N. Y. Supp. 141.*

We are of opinion that this provision of the contract was intended by the parties to make the certificate of the architects conclusive on this question, in the absence of evidence from which an inference might fairly be drawn that their action was fraudulent or so unreasonable and arbitrary as to indicate bad faith or fraud. Of course, where architects grant or refuse a certificate on an erroneous construction of a contract as to the duty devolving upon the contractor, even though this may be a question of fact, as, for instance, the question of substantial performance arising on uncontroverted evidence, the action speaks for itself, and, if the certificate be withheld when it should have been granted, the courts hold that it is sufficient that the certificate was unreasonably withheld, for even in the case of substantial performance such certificate does not prevent deductions which should be made for slight variations and omissions which do not bar a recovery on the theory of substantial performance. MacKnight F. S. Co. v. Mayor, 160 N. Y. 72–86, 54 N. E. 661; Smith v. Mayor, 12 App. Div. 391, 42 N. Y. Supp. 522; Crouch v. Gutmann, 134 N. Y. 45–54, 31 N. E. 271, 30 Am. St. Rep. 608; Nolan v. Whiting, 88 N. Y. 648; Thomas v. Stewart, 132 N. Y. 580, 30 N. E. 577. So, too, when the refusal is not based on failure to perform. Bowery Nat. Bank v. Mayor, 63 N. Y. 336.

Where, however, the certificate is refused in good faith because in the opinion of the architect, in the exercise of his judgment on a question delegated to him under the contract, as in this case, in deciding whether the number of men employed was sufficient, and whether the contractor was proceeding with such diligence as to insure the completion of the building within the period specified, or within a reasonable period, then I think the rule applicable to certificates stipulated to be final, which is that they are only impeachable for fraud or bad faith, should apply here, although there is no express stipulation as to the effect of the certificates on these points. Sweet v. Morrison, 116 N. Y. 19–24, 22 N. E. 276, 15 Am. St. Rep. 376; Smith v. Mayor, 12 App. Div. 391, 42 N. Y. Supp. 522; Snyder v. City, 74 App. Div. 421–428, 77 N. Y. Supp. 637; Becker v. Woarms, 72 App. Div. 196, 76 N. Y. Supp. 438; Woarms v. Becker, 84 App. Div. 491, 82 N. Y. Supp. 1086; Jones v. City, 32 Misc. Rep. 211, 65 N. Y. Supp. 747, affirmed 60 App. Div. 161, 70 N. Y. Supp. 46; Sewer Com'rs v. Sullivan, 11 App. Div. 472–477, 42 N. Y. Supp. 358, affirmed 162 N. Y. 594, 57 N. E. 1123; Del Genovese v. Third Av. R. R. Co., 13 App. Div. 412, 43 N. Y. Supp. 8.

The evidence was sufficient to justify the determination of the architect, even though the court or jury might have decided the questions differently.

In the case at bar no weight appears to have been given to the certificates of the architects, either as bearing on the termination of the contract, or with respect to the cost of completing the work, although on the latter point the contract expressly provides that they shall be conclusive. The learned counsel for the appellant duly requested the court to instruct the jury that, the proceedings under article 5 of the contract having been regular, the defendant rightfully terminated plaintiff's right to prosecute the work, that the certificate of the architects on these questions was conclusive unless it be shown that they acted in bad faith, or maliciously, or corruptly, and that it justified the termination of the employment of the plaintiff, and, further, that there was no evidence that they did act in bad faith or maliciously or corruptly. These requests were refused, and an exception to the rulings was duly taken. We are of opinion that the appellant was entitled to these instructions. Some of the rulings indicate that the court was of opinion that the termination of the contract was not in issue; but it was put in issue by the pleading, evidence, and requests to charge, and was not expressly withdrawn, and, since the action was commenced long before the work was completed by the owner, the plaintiff could only recover on the theory of a wrongful termination of his employment, for nothing was then due on any other theory.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

INGRAHAM, McLAUGHLIN, and CLARKE, JJ., concur. HOUGHTON, J., dissents.