MIDTOWN CONTRACTING CO. v. GOLDSTICKER et al.   (No. 6611.)

(Supreme Court, Appellate Division, First Department.   December 31, 1914.)

1. CONTRACTS (§ 324*)—BREACH—QUANTUM MERUIT.
    Where plaintiff agreed to furnish labor and materials for a building within a certain time, where time was of the essence of the contract, and his employment was terminated under an architect's certificate of failure to prosecute the work as provided in the contract, he cannot recover on the contract, but only on quantum meruit.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1549–1557; Dec. Dig. § 324.*]

2. CONTRACTS (§ 287*)—FAILURE TO COMPLETE—COST OF COMPLETION—ARCHITECT'S CERTIFICATE.
    Where a contract made the architect's certificate conclusive upon the contractor as to the cost of completing the contract, if the contrator failed to do so, the contractor, in an action to foreclose a mechanic's lien, cannot show the cost of completing the contract by estimates as to the items, as against the architect's certificate; that being conclusive.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1308, 1309, 1312–1316, 1318–1338, 1340–1342, 1344–1346, 1348, 1350, 1351; Dec. Dig. § 287.*]

3. CONTRACTS (§ 215*)—TERMINATION—NOTICE.
    Where a contract to repair a building provides "that if the contractor fails to prosecute the work diligently, and such failure is certified by the architect, who was made the sole arbiter between the parties, the owner may, on three days' notice, provide such labor and materials, and if the architect shall certify that such failure is sufficient ground to terminate the contract, the owner may do so," the three days' notice is not necessary to terminate the contract.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 996–1009; Dec. Dig. § 215.*]

4. CONTRACTS (§ 322*)—TERMINATION—SUFFICIENCY OF EVIDENCE.
    In an action on a contract to repair a building within three months, evidence *held* to show that the work was carried on in such a dilatory and unworkmanlike manner as to justify the owner in terminating the contract.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465, 1492, 1534–1542, 1754, 1768, 1772, 1801, 1802, 1804–1808, 1815, 1816; Dec. Dig. § 322.*]

5. INTEREST (§ 19*)—BREACH OF CONTRACT—UNLIQUIDATED BALANCE.
    In an action to foreclose a mechanic's lien, plaintiff is not entitled to recover interest on an unliquidated amount, which could not be ascertained at the time the owner terminated the employment.
    [Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 35–40; Dec. Dig. § 19.*]

    Hotchkiss, J., dissenting, and Dowling, J., dissenting in part.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by the Midtown Contracting Company against Louis Gold-sticker and another to foreclose a mechanic's lien. Judgment for plaintiff, and defendants appeal. Reversed.

See, also, 149 N. Y. Supp. 1097.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, DOWLING, and HOTCHKISS, JJ.

William Goldsticker, of New York City, for appellants.

George Hahn, of New York City, for respondent.

McLAUGHLIN, J. On the 4th of March, 1913, the parties to this action entered into a written contract, by the terms of which the plaintiff agreed, for $9,850, to furnish the necessary materials and labor to make certain alterations in a building owned by the defendants, which sum was to be paid in installments as the work progressed. The alterations were to be completed within three months, and the contract provided that time was the essence of it. One Charles F. Rose was named as architect. Article 5 of the contract provided that:

"Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architect, the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due, or thereafter to become due, to the contractor under this contract; and if the architect shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials, or for furnishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties."

On the 30th of April, 1913, the architect delivered to the defendants a certificate to the effect that by reason of plaintiff's neglect and failure to furnish the materials and labor, and proceed with the work called for by the contract, that they, in pursuance of article 5 thereof, were justified in terminating the employment of the plaintiff and completing the contract themselves. On the day following the defendants served written notice upon the plaintiff that they so elected, and in pursuance thereof took possession of the building and completed the work. Plaintiff subsequently filed a notice that he claimed a lien upon the property for a certain specified amount. This action was brought

to foreclose such lien, and for a personal judgment against defendants for any deficiency that might result from the sale, with interest from May 1, 1913. The answer put in issue the material allegations of the complaint, and set up as affirmative defenses, among others: (1) That defendants terminated the employment of the plaintiff under the contract in pursuance of article 5 thereof, the architect having certified they were justified in so doing by reason of plaintiff's failure to perform; (2) that the plaintiff voluntarily abandoned the contract —and asked that the complaint be dismissed, the lien discharged, and that they have judgment against the plaintiff for $5,000 damages.

At the conclusion of the trial the court found, as a fact, that there was a balance due plaintiff of $4,451.60, which was the contract price, and $876.60 for extra work and materials, less a credit of $140 and $6,135, which it would have cost the plaintiff to have completed the contract, had it been permitted to do so; as conclusion of law, that plaintiff was entitled to a lien upon the premises for the amount found due, with interest from May 1, 1913, and also, if the sale of the premises, which was directed, did not realize sufficient to pay the plaintiff that amount, together with the costs of the action, then plaintiff have personal judgment against the defendants for any deficiency that might remain due. Judgment was entered to this effect, from which the defendants appeal.

I am of the opinion the judgment should be reversed.

[1] First. The case was tried and decided upon what I think was an erroneous theory of the law. The plaintiff, if entitled to succeed at all, could recover only the value of labor performed and materials furnished, to be determined, not by the contract, but by competent evidence bearing upon those subjects. A mechanic's lien is restricted by express provision of the statute to the value of the labor performed and the materials furnished. Any claim for damages for breach of a contract in refusing to allow a contractor to do the work is not within the provisions of the act, and must be enforced in an ordinary action for damages against the contracting party. Doll v. Coogan, 48 App. Div. 121, 62 N. Y. Supp. 627, affirmed 168 N. Y. 656, 61 N. E. 1129; O'Reilly v. Mahoney, 123 App. Div. 275, 108 N. Y. Supp. 53. Here the plaintiff was permitted, against objection and exception, to prove in a general way what it would have cost it to have completed the contract, and also the cost of the labor and materials up to the time the contract was terminated. The court accepted these estimates—and they were nothing more—credited the defendants with what it would have cost to complete the contract and a small item for work dispensed with, and gave the plaintiff judgment for the difference between those items and the contract price, plus $876.60 for extra work. His finding on the subject is as follows:

"That the contract price named in said first-mentioned contract being $9,850, and the amount unpaid for said extra work and materials being $876,-60, making a total of $10,726.60, and the defendants being entitled to said credit of $140 for work dispensed with and $6,135 for the cost to the plaintiff of completion of said contract, making a total credit of $6,275, there remains a balance of $4,451.60, with interest from May 1, 1913, due and owing from the defendants to the plaintiff."

From which he concluded, as matter of law:

"That the plaintiff is entitled to a lien upon said premises for the sum of $4,451.60, with interest from May 1, 1913, besides the costs of this action."

[2] The finding as to what it would cost the plaintiff to complete the contract is against the evidence, because the fact is uncontradicted that the defendants paid .to another contractor for the completion of the work, $13,483.41. The contract itself made the architect's certificate, in case the defendants completed the contract, final and conclusive upon the plaintiff, and his certificate shows that the figures above given is what it actually cost the defendants.

[3] Second. I am of the opinion that the court erroneously construed article 5 of the contract. According to the memorandum of the learned justice who tried the action, the defendants could not, under article 5, terminate plaintiff's employment without giving three days' notice in writing. Concededly such notice was not given. I think, under this article, the architect having certified to the defendants that the acts of the plaintiff were sufficient ground for the termination of the contract, they could terminate it without giving prior notice. Under this article, the owner, on a proper certificate of the architect, could provide certain labor and materials, having given a notice of three days of his intention so to do. The contract, in that case, is not terminated, but the cost of the labor and materials furnished is to be deducted from any sum "thereafter to become due." The contract, however, could be terminated on a proper certificate of the architect, and, if it were terminated, then a notice of three days was not required. The notice is only required ·in the first instance. Mahoney v. Oxford Realty Co., 133 App. Div. 656, 118 N. Y Supp. 216; Valente v. Weinberg, 80 Conn. 134, 67 Atl. 369, 13 L. R. A. (N. S.) 448.

Charlton v. Scoville, 68 Hun, 348, 22 N. Y. Supp. 883, affirmed 144 N. Y. 691, 39 N. E. 394, does not, as I read it, hold to the contrary. In that case the architect had never given the owner a proper certificate authorizing him to terminate the employment. In the case at bar the architect, by the terms of the contract, was made the sole arbiter of the sufficiency of the ground for the termination of plaintiff's employment, and it was neither alleged nor proved that the certificate which he gave was issued in fraud or bad faith. Such certificate, therefore, was binding and conclusive under the contract, and gave the defendants the right to terminate the employment without prior notice. Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, 15 Am. St. Rep. 376; Mahoney v. Oxford Realty Co., 133 App. Div. 656, 118 N. Y. Supp. 216; Molloy v. Village of Briarcliff Manor, 145 App. Div. 483, 129 N. Y. Supp. 929.

[4] Third. But irrespective of the defendants' right under article 5 of the contract to terminate it on the architect's certificate without prior notice, I do not think plaintiff was entitled to recover. A fair preponderance of the evidence shows that plaintiff either abandoned the work or proceeded in such a dilatory and unworkmanlike manner that defendants were justified in terminating its employment. From the very beginning, the work proceeded so slowly that plaintiff was

notified time and again to go ahead, which he did not do, and the work which he did was done in such an unworkmanlike manner that several violations were filed against the premises by the building department. Notwithstanding the contract obligated the plaintiff to do the necessary shoring, he did not do it, and the violations were filed in at least two instances because the building was liable to collapse. It is true plaintiff did certain extra work, and while doing it he absolutely refused to do any work under his contract. A fair consideration of the evidence discloses no reason why work under the contract should not have proceeded along with the extra work which plaintiff undertook to perform. I am satisfied that the work was undertaken with insufficient equipment and prosecuted in a most unworkmanlike manner. The truth undoubtedly is that plaintiff accepted a losing contract, and when he ascertained that fact attempted to shift the loss upon the owners by proceeding in such a way that they would cancel it.

I am unable to reach any other conclusion than that plaintiff's conduct amounted to such an abandonment of the work as justified the defendants in terminating the contract.

[5] In no possible view was plaintiff entitled to recover interest upon the amount found due, since such amount was unliquidated, and could not have been ascertained when defendants terminated the employment.

My conclusion is that the judgment appealed from should be reversed, and a new trial ordered, with costs to appellants to abide the event.

INGRAHAM, P. J., and LAUGHLIN, J., concur. DOWLING, J., concurs, except as to second ground assigned.

HOTCHKISS, J. I think the judgment should be modified and not reversed. I dissent from the construction of Article V of the contract, adopted by the prevailing opinion. I assent to the proposition that there could be no lien for the portion of the claim represented by damages for defendant's breach of the contract and also to the disallowance of interest. But for the unpaid portion of the work and materials actually furnished a lien should be sustained, and for this plus the said damages there should be personal judgment against the owner. Abbott v. Easton, 195 N. Y. 372, 88 N. E. 572; Lien Law (Consol. Laws, c. 33) § 54.