ANTONIO S. FAILLACE and Others, a Copartnership Doing Business under the Firm Name and Style of FAILLACE BROTHERS, Respondents, *v.* VILLAGE OF MAMARONECK, Appellant.

Second Department, November 16, 1923.

Villages — action by contractor to recover damages from village for preventing it from finishing construction of sewer and for materials appropriated by defendant — contract provided that if contractor failed to supply enough properly skilled workmen or proper materials or failed to prosecute work diligently defendant on notice might take over work and complete same — no particular form of notice is required — details of deficiency need not be specified where rights of contractor are not to be forfeited absolutely — notices served were sufficient.

No particular form of notice is required to terminate a sewer construction contract which provides that, if the contractor at any time shall refuse or neglect to supply a sufficiency of properly skilled workmen or of materials of proper quality and quantity or shall fail in any respect to prosecute the work with promptness and diligence or fail in the performance of any of the agreements made by him, the village shall be at liberty after five days' notice to the contractor to provide the labor or materials necessary to complete the contract and to deduct the cost thereof from any money due or to become due to the contractor, and that the village may terminate the employment of the contractor and enter upon the premises and take possession of all materials and appliances of every kind for the purpose of completing the contract and if, when the contract is completed, the cost is less than the contract price, the contractor shall be paid the balance due under the contract.

All that is necessary is that the notice required by the contract between the parties shall be couched in such plain and unambiguous language that it shall be sufficient to convey to the contractor the objection of the village to the method in which the work is being done or any other specific fault the village desires to attribute to the contractor, unless the purpose of the notice is to destroy the rights of the contractor and deprive him of any accounting for the balance due after the village shall complete the contract; in that case, there should be a strict construction of the provision of the contract as to notice.

Accordingly, in this action to recover damages from the defendant for ousting the contractor from the construction of a sewer and for the value of materials and equipment appropriated by the defendant, a notice served on the contractor was sufficient, which required it to comply with the terms of the contract in reference to the number of workmen and the quality and quantity of materials and to prosecute the work with promptness and diligence, and which stated that if it did not do so within five days the village would provide the labor and materials and deduct the cost from moneys due the contractor under the contract and would enter upon the premises and take possession of all materials

and appliances, where said notice was followed by a subsequent notice, served two days before the defendant took possession of the materials and equipment and ousted the contractor from the job, to the effect that by reason of its default and failure to comply with the terms and conditions of the first notice, the defendant would forthwith provide any and all labor and materials required by the contract and would complete the contract and deduct the cost of such completion from the amount due to the contractor.

APPEAL by the defendant, Village of Mamaroneck, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Westchester on the 23d day of April, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying the defendant's motion for a new trial made upon the minutes.

*Henry R. Barrett* [*Anthony Sansone* with him on the brief], for the appellant.

*Henry K. Heyman* [*Frederick P. Close* with him on the brief], for the respondents.

MANNING, J.:

The plaintiffs, who are general contractors, brought this action against the defendant village, for which they were building a sewage disposal plant. In their complaint two causes of action were set forth: *First*, for damages suffered by the plaintiffs because the defendant, as they claim, unlawfully ousted the plaintiffs and prevented them from completing their work under a contract which they had with the village. The second cause of action is. for damages claimed for the alleged unlawful act of the defendant in taking possession of plaintiffs' material and equipment which were on the work at the time of the alleged ouster.

The answer of the defendant is, in substance, a general denial.

There is no dispute concerning the main facts in this controversy, and the sole question before us on this appeal has to do with the correctness of the rulings made by the learned trial justice in reference to the sufficiency and legal effect of a notice or notices served upon the plaintiffs by the defendant, terminating the contract between the parties on the alleged ground that the plaintiffs were unreasonably delaying the prosecution of the work.

The contract bears date June 3, 1922. By its terms the work called for was to be commenced within ten days after that date. There was also a condition in the contract that the rate of progress of the work should be such that pumps and screens and sufficient piping to by-pass the screened sewage to the outfall should be completed not later than December 15, 1922, and that the whole work should be finished not later than April 15, 1923.

It appears that the plaintiffs began work in the latter part of

July, 1922, and the manner and progress being, as the defendant claims, unsatisfactory and dilatory, the defendant, on the 14th day of October, 1922, served upon the plaintiffs a five-day notice to terminate the contract, pursuant to section 24 thereof. This notice bears date October 10, 1922. No attention having been paid to the notice by the plaintiffs, the defendant, on the 20th of October, 1922, served upon the plaintiffs a second notice regarding the termination of the contract in the event of a failure to proceed, and the plaintiffs still ignoring such notices, the defendant, on or about October 22, 1922, entered upon the work, took possession of the plaintiffs' plant and proceeded to complete the work which the plaintiffs had contracted to do.

Section 24 of the contract, under which the defendant assumed to act in serving the notices referred to, reads as follows:

" XXIV. Should the Contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen or of materials of the proper quality and quantity, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on his part herein contained, the Village shall be at liberty after five (5) days' notice to the Contractor (which notice may be mailed to the Contractor's last known address) to provide any such labor or materials and to deduct the cost thereof from any money due or thereafter to become due to the Contractor hereunder; and in such case the Village shall also be at liberty to terminate the employment of the Contractor for said work and to enter upon the premises and take possession of all materials and appliances of every kind whatsoever thereon, and to employ any other person or persons to finish the work and to provide the materials therefor; and in case of such discontinuance of the employment of the Contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the Village in finishing the work, such excess shall be paid by the Village to the Contractor; but if such expense shall exceed the aforesaid unpaid balance the Contractor or his surety shall pay the difference to the Village. The expense incurred by the Village as herein provided either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the Engineer, whose certificate thereof shall be conclusive upon the parties."

The notice served by the village in the situation disclosed read as follows:

10

" MAMARONECK, N. Y., *October* 10*th*, 1922.

" To:  FAILLACE BROTHERS,
   " 7 East 42nd Street,
     " New York, N. Y.:

" TAKE NOTICE, that pursuant to the terms of your contract with the Village of Mamaroneck, N. Y., dated June 3, 1922, you are hereby directed and required to supply a sufficiency of properly skilled workmen and materials of the proper quality and quantity, and prosecute the work under said contract with promptness and diligence, within five (5) days from the date of the service of this notice upon you, in default of which the said Village of Mamaroneck will provide any such labor and materials and deduct the cost thereof from any money due you or thereafter to become due to you under said contract, and will enter upon the premises and take possession of all materials and appliances of every kind whatsoever thereon and finish the work and provide the materials therefor and charge the cost or expense of the same to you.

    " VILLAGE OF MAMARONECK,
       " By EDGAR L. HOWE,
           " *Clerk.*"

The second notice, sent on the twentieth of October, read as follows:

    " MAMARONECK, N. Y., *October* 20*th*, 1922.

" FAILLACE BROTHERS,
   " #7 East 42nd Street,
     " New York City:

" TAKE NOTICE, that by reason of your default and failure to comply with the terms and conditions of a certain Notice addressed to you by the Village of Mamaroneck, N. Y., bearing date the 10th day of October, 1922, and served upon you personally on the 14th day of October, 1922, the said Village of Mamaroneck will forthwith provide any and all labor and materials specified and called for in your contract with said Village bearing date, June 3rd, 1922, and deduct the cost thereof from any money due you or hereafter to become due to you under said Contract, and will forthwith enter upon the premises and take possession of all materials and appliances of every kind whatsoever thereon, and finish the work and provide the materials therefor and charge the cost or expense of the same to you.

    " VILLAGE OF MAMARONECK,
       " By EDGAR L. HOWE,
           " *Clerk.*"

There is no dispute on the part of the plaintiffs that the notices were properly served upon them.

The plaintiffs' contention upon the trial was that the action of the defendant in thus attempting to terminate the contract was unjustifiable, and was illegal because of the fact that the notices served were wholly defective and insufficient for the reason that they did not point out in what respect the plaintiffs were failing to supply a sufficiency of men and materials. The defendant, however, maintained that the notices were sufficient, and whether they were or were not is the cardinal question in this case before us.

At the opening of 'the trial the question of the sufficiency of these notices was argued, and after hearing counsel the learned trial justice determined that the notices were sufficient, and directed the trial to proceed, which was done and some testimony was taken. Later in the day, however, the court changed its ruling and held the notices to be insufficient. The defendant duly excepted to such ruling. The result of this change in the court's ruling was that the inquiry was limited to an assessment of damages suffered by the plaintiffs by reason of the termination of the contract, for the loss of profits, money earned and due, and also the value of the material and plant wrongfully taken by the defendant. And, of course, under this ruling, no trial upon the merits took place at all, because all that the jury had to do under the court's direction was to assess damages. The defendant was not even permitted to show as a matter of fact that it was justified in giving the notice. Neither was it permitted to show whether the plaintiffs had so conducted their work that the village sustained any financial damage. And in addition to this, is it not a fair inference that the jury was prejudiced against the defendant when the learned trial justice charged that its act in taking over the plaintiffs' property was illegal and wrongful? The learned trial justice said in his charge that " The defendant stands in the position of a wrongdoer, having taken the property mistakenly and so unlawfully." The defendant excepted to this ruling and also to the charge.

We think that the action of the trial justice in reference to the requirements of the notice, and also in limiting the proof upon the trial, compels a reversal of this judgment and the granting of a new trial. The village has not had its day in court and we think it should be allowed to present its phase of this controversy.

In the very complete and interesting briefs submitted by counsel for both parties to this controversy, our attention has not been called to any authority in this or any other jurisdiction requiring any particular form for a notice to terminate a contract in a similar situation to that shown by the record in this case. All that seems to be necessary is that the notice required by the contract between the parties shall be couched in such plain and unambiguous language

that it will be sufficient to convey to the contractor the objection of the owner to the method in which the work is being done, or any other specific fault the owner desires to attribute to the contractor. In Elliott on Contracts (Vol. 4, p. 987 *et seq.*) it is stated: " Sometimes building contracts specify that notice shall be given in writing to the contractor, when the employer is dissatisfied with the work, whether as to its progress or to the quality of the materials furnished, and that, if after notice the contractor fails to comply, the employer can take possession of and complete the work. Any plain statement conveying the intention of the party to claim the benefit of the provision will be generally held to be sufficient, as for instance: ' I give notice to you to supply all proper and sufficient materials and labour for the due prosecution of the works, and with due expedition to proceed therewith; and further, if you shall for the space of seven days after the giving of this notice, fail or neglect to comply therewith, I shall as engineer, and on behalf of the corporation, take the works wholly out of your hands.' " (Citing *Pauling* v. *Dover*, 10 Exch. 753.) This famous case, which is one of the earliest authorities upon this disputed question, was decided by the Court of Exchequer in 1855. The court consisted of POLLOCK, Chief Baron, and Barons PARKE and ALDERSON. Baron POLLOCK said: " We are all of opinion that the notice is sufficient. It would be a difficult matter to frame a notice more specifically, unless the party giving it were bound to descend into minute particulars; which I think he cannot be called upon to do." Baron PARKE, concurring, said: " I am of the same opinion. I think, that, if the engineer had wished the plaintiff to do some particular piece of work, as, for instance, to pull down and rebuild some portion of the work, the notice should have specifically stated to what extent he required the particular work to be done. But here the objection of the engineer is, that the work in general is done in a negligent and sluggish manner. It is, therefore, sufficient for him to give a general notice of this description. He tells the plaintiff he is proceeding in a negligent and slow manner, and requires him to do the work better, and with more expedition. Such a notice is good." Baron ALDERSON said: " If issue were taken on the notice, I agree that the defendants would fail if they meant to say that the plaintiff should have made some alteration in his work; but if they intended to say that the plaintiff got on too slowly with the work, and that he had not provided sufficient materials for it, and that such a state of things lasted for seven days after the notice had been given, the defendants would prove their plea." I am inclined to the belief in this case that the notices served by the defendant were amply suffi-

cient to call to the attention of the contractor the claims of the village with respect to the manner in which this work was being delayed.

I do not see how any arbitrary rule can be invoked here to solve a question of this kind, and I think as a general proposition that each case must be determined upon the peculiar facts established by the evidence. The contract before us simply called upon the contractors to perform the work according to the plans and specifications, for a specified sum of money. And this work was to be done within a fixed period of time. The village, on its part, was to pay for this work as it progressed, at stated intervals, assuming that the work was done satisfactorily. The very character of the work itself and the times for the completion thereof — partially and fully — were regarded by both parties as being important. This is evidenced by the fact that a penalty for delay is provided for in the contract. The provision regarding the right of the village to notify the contractor to proceed more diligently with his work meant something, or it means nothing. The only reasonable construction which can be applied to the clause in reference to notice is, that if the work was not going forward with proper diligence, the village, after notice to the contractor, had the absolute right to take over the work, complete it and hold the contractor liable for damages. The very tenor of the notices served by the village was enough to warn the contractors that the dilatory manner in which they were proceeding with the work was the reason why the notices were served. It is true that the contract itself is silent as to the rate with which this work should progress; it merely provides that a portion thereof shall be finished by December 15, 1922, and that the whole work should be completed in April, 1923. It is true that the conduct of the work and its rate of progress in its various stages is left entirely to the discretion of the contractor, but let us assume for one moment that the contractor had done no work at all under this contract up to the time that the notice was served upon him in October; can it be said that the village would be powerless in the situation, and that it had no rights under the contract, which contains the express provision that in case the contractor shall fail to supply a sufficiency of men and materials, the village shall have the right to terminate the contract? To say that the village had no rights in the premises would place the village at the mercy of the contractor. As the court said in *Mahoney* v. *Oxford Realty Company* (133 App. Div. 656, 663): " According to the construction for which the respondent contends, he practically runs no risk in failing to perform his contract. He may employ one man, where it is manifest that it would require twenty to

complete the work as required by the contract, and rest on the assurance that the owner must submit to his unreasonable conduct; or, if it become unbearable, all that the owner may do, at most, is to take charge of the work, which will leave the contractor in a position to contend in the first instance that he is entitled to damages on account of the wrongful termination of his contract, which would be the balance unpaid on the contract less the amount it would have cost the contractor to have completed the work. * * *." Such a construction is, in effect, a trap for the owner, and gives the contractor an advantage which he would not ordinarily have without such a provision. The case of *Ackroyd & Sons* v. *Proctor* (173 App. Div. 413), to which our attention has been called, is not decisive of the question presented here. In that case the contract provided that all work performed should be done with labor satisfactory to the owner. The contractor employed non-union labor, and this was unsatisfactory to the owner, who notified the contractor. I find nothing in that case which indicates what the form of a notice should be; but, on the contrary, the principle is announced that the purpose of the notice is to give the contractor time and opportunity to overcome his own delinquency, and to notify him that in case he fails to do so after three days the defendant should have an option of supplying such delinquency at the contractor's expense. The case of *Champlain Const. Co.* v. *O'Brien* (104 Fed. Rep. 930) is interesting, but does not touch the point in question here, for the question which seemed to be considered important in that case was not whether the notice was sufficient, but whether it was given by proper authority and what its intention was. Other cases to which we are referred are *Graf* v. *Cunningham* (109 N. Y. 369); *Wilds* v. *Board of Education* (227 id. 211); *Wright* v. *Reusens* (133 id. 298); *Matter of Shelly* (235 Fed. Rep. 311), and *American-Hawaiian Engineering & Const. Co.* v. *Butler* (165 Cal. 497). All of these cases, however, can easily be distinguished from the one under consideration, and do not decide the precise question involved here. A reading of the cases to which reference has been made, other than the English authority which I first cited here, would seem to indicate that if the purpose of a notice is to destroy the rights of a contractor and deprive him of any accounting for a balance due after the owner shall complete, then and in such a situation there should be a strict construction of the provision as to notice; but if this is not the case, then any form of a notice which brings the matter to his attention is sufficient, because his rights will fully be protected when the controversy is heard on its merits, and any balance then found due must be paid over to him.

In the present case there is no dispute that such a situation exists, and this being so, it does not seem reasonable to hold that the contractor, after receiving notices of his default, can ignore their purport, refrain from calling upon the owner to specify more particularly his shortcomings, and finally, by questioning the technical construction of the notices, recover a judgment against the owner without affording the owner the slightest chance to present the merits of the controversy.

I do not think there has been a proper trial of the issues in this case for the reasons stated, and I suggest a reversal of the judgment and order upon the law and the facts, and the granting of a new trial, with costs to abide the event.

KELLY, P. J., RICH, JAYCOX and YOUNG, JJ., concur.

Judgment and order reversed upon the law and the facts, and a new trial granted, with costs to abide the event.