AMBERG GRANITE COMPANY, Appellant, vs. MARINETTE COUNTY, Respondent.

*March 14—May 1, 1945.*

38

For the appellant there were briefs by *Elmer Grimmer* of Marinette, and *Strehlow & Cranston* of Green Bay, and oral argument by *Max H. Strehlow*.

*N. B. Langill*, district attorney, for the respondent.

FAIRCHILD, J. The plaintiff, December, 1940, assumed a burden by the terms of its contract with defendant which eventually proved to be beyond its ability to carry. Under the facts established, a finding that plaintiff was, on March 24, 1941, so circumstanced that it could not deliver according to the terms of the contract, is amply sustained. Although there is a claim by plaintiff of being capable of living up to its agreement, the evidence shows an inability which amounts to an absolute and unconditional disclosure of intention to default unless it could induce concessions of considerable consequence from defendant.

Defendant, prior and up to March 24, 1941, had carried out its part of the agreement. On February 25, 1941, plaintiff wrote a letter to the building committee, in effect, demanding an increase in its compensation of $11,650. The chairman of the county board testified that the reason Marinette county terminated the contract was that there were approximately thirty-nine contracts to be fitted into the

making of the building, and that the county was very much concerned over each contractor coming in and doing his specific work. "It was absolutely necessary to have the facing of this building and the roof, and such, taken care of immediately, and it had to be a part of the scheme of making a completed building. With the request for additional money and with the request for additional hours of man labor and WPA we viewed it as a repudiation of their former contract, and for that reason ordered the termination—ordered them to cease work."

The contention that the circuit court erred in dismissing plaintiff's complaint because the defendant wrongfully prevented completion is not well-founded. In this connection, plaintiff set up a failure of defendant to furnish sixteen skilled pneumatic stonecutters. But the jury found that both parties to the contract understood that pneumatic cutters were not within the contract. And this is amply sustained by the evidence. It appears that the secretary of the plaintiff was familiar with the type of stonecutters available in that district, and that all of such cutters were hand-tool operators. All of the WPA cutting operations at the Amberg quarry had been by hand-tool operators. It is a reasonable inference to be drawn from the facts and circumstances surrounding the transaction, that hand-tool operators were to be provided under the contract. The evidence in the case establishes that the defendant furnished the number of laborers required of it, and in all things performed faithfully its contractual obligations.

Since defendant was not in default at the time of termination, we become concerned as to whether there was a breach or default by plaintiff justifying the defendant in ending the contract and asking for damages. From an examination of the testimony as to the conduct of the plaintiff prior to notice of termination, it appears that the amount of work necessary to be done, together with the letter of February 25th, evidences

an effective breach by plaintiff, justifying rescission by the defendant. Although it has been held that the right to rescind for an anticipatory breach is exceptional and can be permitted only where future breach is conclusively established, *Smoot's Case* (1872), 15 Wall. (U. S.) 36, 21 L. Ed. 107; *Dingley v. Oler* (1886), 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984, nevertheless where a party disables himself from performing the other party may treat the contract as rescinded and sue at once. 9 Am. Jur. p. 54, sec. 81. Although a mere anticipation that a contractor will not be able to perform may not be sufficient to justify treating the delay as a total default, still where the contractor who is months behind a schedule agreed upon demands more time and the circumstances of the case show that time is material and is of the essence of the contract, a termination of the contract is justified. As to the rule, see *Brady v. Oliver* (1911), 125 Tenn. 595, 618, 147 S. W. 1135, where it is said: "It must clearly appear, not only that defendant could not do the work within the time, but that his failure in respect of this matter would be so material as to make his performance essentially different from his promise." See also *Midtown Contracting Co. v. Goldsticker* (1914), 165 App. Div. 264, 150 N. Y. Supp. 809. The materiality of time is here apparent. There were thirty-nine separate contracts involved with this contract, and in some measure, each was dependent on the other. Failure to perform on time would result in a disruption of the entire schedule of construction.

The plaintiff indicated in its letter of February 25th, that it would be unable to go on unless it received more compensation, and even then would have to have an extension of time. The jury so found, and there is no reason to upset that finding. An extension of time asked by the contractor who was already behind would have had the result indicated, of preventing other contractors completing their contracts timely.

Plaintiff also asserts that the termination was wrongful and of no effect since the seven days' notice provided for in the contract was not given. However, the notice stated that the termination is made "pursuant to the provisions of said contract." It follows, therefore, that the notice contemplated a lapse of seven days before it became effective. And in any event, there could be no resulting prejudice to plaintiff for it had available for its purposes the seven days. Plaintiff was warned and although it might have resisted any attempt to remove it from the job during the seven days, it cannot complain that the notice was not effective.

The defendant, of course, was entitled to have the work and material plaintiff had engaged to deliver for the contract price of $17,950 at or about the time which the parties had agreed upon. And it is entitled to be placed in the position in which it would have stood had plaintiff carried out its agreement. The method adopted and material used by defendant in protecting its rights was less profitable to it, and less burdensome to plaintiff than completing the contract with granite. It is also consistent with the rule of damages in case of default agreed upon by the parties.

The jury found that the cost of the completion of the contract (using granite) would have been $50,000. The evidence shows that with the material used, the cost was upwards of $12,000 above the contract price. The court, however, held that under figures most favorable to plaintiff, and referred to in the statement of facts, the judgment should be for the defendant on its counterclaim in the sum of $9,475. The plaintiff is not injured by the trial court's ruling. And since there is no motion to review by defendant, there will be an affirmance of the judgment.

*By the Court.*—Judgment affirmed.